**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 7 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

TIMOTHY M. BEERS,

        Defendant - Appellant.

No. 98-2250

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D. Ct. No. CR-96-443-SC)**

---

Ralph C. Binford, Deming, New Mexico, appearing for Defendant-Appellant.

Norman C. Bay, Assistant United States Attorney (John J. Kelly, United States Attorney, with him on the brief), Albuquerque, New Mexico, appearing for Plaintiff-Appellee.

---

Before **SEYMOUR** , Chief Judge, **TACHA** , and **KELLY** , Circuit Judges.

---

**TACHA** , Circuit Judge.

---

On May 1, 1997, a jury convicted Timothy Beers of Kidnapping in violation of 18 U.S.C. § 1201(a)(1) and Coercion and Enticement to Engage in Prostitution in violation of 18 U.S.C. § 2422(a).  The district court entered

judgment in accordance with the verdicts on September 21, 1998.  Defendant appeals the convictions, alleging a plethora of errors involving evidentiary rulings, jury instructions, sufficiency of the evidence, failure to hear from defendant regarding his desire to dismiss counsel, and denial of defendant's motion for a new trial based on the government's alleged failure to provide certain impeachment evidence.  We affirm.

## I.  Background

Theresa Elliot, mother of an eight-year-old boy referred to as "John Doe" in the indictment, became a prostitute in the summer of 1995 in Spokane, Washington.  She identified defendant as a pimp she had seen in Albuquerque and Phoenix who had several women working for him.  Although Elliot did not work for Beers at the time, she and her son traveled with him to Salt Lake City in June 1996.  On the second night in Utah, Elliot testified that she went to work, letting Norgaard, one of Beers' prostitutes, babysit Doe.  According to Elliot, Beers would not thereafter return her child, telling her that she now worked for him.

Elliot remained in Salt Lake City for five or six more days.  She told Beers that she did not want to prostitute for him and wanted her son back.  Beers told her that he was taking Doe to Phoenix with him.  According to Elliot and Twila Lujan, another of Beers' prostitutes, neither Elliot nor Doe wanted Doe to go with Beers.  Sheila Smith, a former prostitute called by the defense, however, testified

that Elliot helped Doe pack a bag for the trip. Lujan testified that Beers told her he was keeping Doe to make Elliot work for him because "she made a lot of good money." Supp. App., Vol. III, at 280-81.

Elliot did not know where Beers took Doe. He instructed her to send him $500 per night via another of his prostitutes. Beers did not let her speak to Doe without him present nor was she allowed to visit Doe alone. Elliot testified that she stopped sending money after three days, hoping that Beers would release Doe if she did not cooperate. Her plan failed. She stated Beers told her, "Bitch, you must be crazy. I've got your son. What are you going to do?" Id. at 109. Beers instructed her to meet him in Illinois for his family reunion.

After the reunion, Beers sent Elliot to Albuquerque to earn traveling money for him and his other prostitutes. Lujan also returned to New Mexico. Once in Albuquerque, Elliot called the police, who contacted the Federal Bureau of Investigation ("FBI"), and reported Beers' activities. The FBI monitored several phone calls between Elliot and Beers before arresting Beers in Illinois.

## II. Discussion

### A. Evidentiary Rulings

"We review evidentiary challenges for an abuse of discretion." United States v. Lugo , 170 F.3d 996, 1005 (10th Cir. 1999). At trial, defendant submitted a motion in limine to exclude the government's evidence that Beers had abused

Doe. The district court granted the motion, but stated that if defendant submitted evidence of a happy, content child, it would open the door to the government's evidence of abuse. Defendant chose not to introduce his evidence. These circumstances do not indicate any abuse of discretion on the part of the district court. Moreover, to the extent that defendant argues this ruling amounted to a violation of Beers' right to a fair trial, we hold that no constitutional violation occurred.

Defendant also claims that throughout his trial, the district court "persistently admitted improper and prejudicial uncharged misconduct evidence against Mr. Beers and his witnesses while just as persistently shielding prosecution witnesses from appropriate impeachment and refusing properly to limit their testimony." Appellant's Br. at 27. Beers argues that this constituted an abuse of discretion. We disagree. After reviewing each of the five alleged errors regarding the admission or exclusion of evidence, we find that the district court did not abuse its discretion as to any ruling. Thus, there can also exist no cumulative error.

## B. Jury Instruction

Defendant claims two reversible errors involving jury instructions. We review a district court's decision whether or not to give a particular instruction for an abuse of discretion. See United States v. Dozal, 173 F.3d 787, 796 (10th

Cir. 1999); Allen v. Minnstar, Inc. , 97 F.3d 1365, 1368 (10th Cir. 1996).

However, "we conduct a de novo review to determine whether, as a whole, the

instructions correctly stated the governing law and provided the jury with an

ample understanding of the issues and applicable standards." Allen , 97 F.3d at

1368. "A defendant is not entitled to an instruction which lacks a reasonable

legal and factual basis." United States v. Bryant , 892 F.2d 1466, 1468 (10th Cir.

1989).

Beers claims that the district court committed reversible error by refusing

to instruct the jury regarding the parental exception to the kidnapping statute.

According to Beers, he acted as a surrogate parent and should have received a

parental exception instruction because the jury heard some evidence that he

provided food, shelter, and clothing to Doe and allowed him to play with other

children. We disagree.

Defendant relies upon United States v. Floyd , 81 F.3d 1517 (10th Cir.

1996), for the proposition that a surrogate parent is exempt from prosecution

under 18 U.S.C. § 1201. We stated in Floyd that the term "parent" in § 1201 is

broad enough to encompass a surrogate parent who had "demonstrated that he was

performing the 'incidences' of parenthood at the time of the kidnapping." Floyd ,

81 F.3d at 1522. In this case, the record contains no evidence that *at the time of*

*the kidnapping* Beers acted as Doe's surrogate father. If defendant actually

- 5 -

fulfilled some parental responsibilities for the child, he did so only after taking the child. Thus, even assuming that this defense might properly be submitted to the jury, [1] we agree with the district court that facts presented at Beers' trial did not support this instruction.

Defendant also claims the district court erred when it instructed the jury to consider John Doe's capacity to consent to going with defendant. After carefully reviewing the record and jury instructions regarding consent, we find no abuse of discretion in the district court's capacity to consent instruction and no legal error in the overall formulation of the instructions. Taken as a whole, the instructions correctly stated the governing law and provided the jury with an ample understanding of the issues and applicable standards pertaining to kidnapping in violation of 18 U.S.C. § 1201.

## C. Sufficiency of the Evidence to Support Kidnapping Charge

Beers faces a high hurdle in trying to prove that the evidence is insufficient to support his kidnapping conviction. "[I]n reviewing the sufficiency of the evidence to support a jury verdict, this court must review the record de novo and

---

[1] The government argues that the question of whether the parental exception applies is a question for the court, not the jury, to decide. It also contends, *inter alia*, that even if such an instruction could appropriately be submitted to the jury, the proffered instruction in this case misstated the law because it shifted the burden of proving that defendant was not a surrogate parent to the government. Given our disposition of this issue, we need not decide these issues.

- 6 -

ask only whether, taking the evidence – both direct and circumstantial, together with reasonable inferences to be drawn therefrom – in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." United States v. Voss , 82 F.3d 1521, 1524-25 (10th Cir. 1996) (internal quotation marks and citations omitted); see also United States v. Copus , 110 F.3d 1529, 1534 (10th Cir. 1997). "We do not use this evaluation as a chance to second-guess the jury's credibility determinations, nor do we reassess the jury's conclusions about the weight of the evidence presented." United States v. Yoakum , 116 F.3d 1346, 1349 (10th Cir. 1997) (internal quotation marks and citation omitted).

Beers argues that the government failed to prove beyond a reasonable doubt an essential element of the kidnapping offense – absence of the victim's consent. Consent of the victim to travel in interstate commerce with the defendant is a defense to the federal kidnapping statute. See United States v. Toledo , 985 F.2d 1462, 1467 (10th Cir. 1993). Beers apparently bases his argument on two facts: (1) the government did not call Doe, the eight-year-old victim, to testify as to whether or not he consented to travel with defendant, and (2) the testimony of the other witnesses conflicted as to Doe's consent. We find the first fact irrelevant. As for the testimony, Theresa Elliot testified that she did not consent to defendant taking her child and her child did not want to go with defendant. Twila Lujan

stated that she saw Doe crying because he did not want to go with Beers to Phoenix. Further testimony revealed that defendant did not allow Elliot to be alone with Doe while in Illinois. Sheila Smith, another prostitute who had worked for defendant, contradicted Elliott's and Lujan's version of events, contending that Doe actually wanted to leave Salt Lake City with defendant. The prosecution seriously challenged Smith's credibility, however, by introducing impeachment evidence and witness testimony that she had worked for and been romantically involved with Beers and had admitted this to the FBI. She denied these facts at trial. Thus, the question of Doe's consent was essentially one of witness credibility. Viewing the evidence in the light most favorable to the government, we find that a reasonable jury could have concluded beyond a reasonable doubt that the child, John Doe, did not consent to go with Beers.

**D. Defendant's Motion to Fire His Attorney**

At the close of defendant's case and directly before closing arguments, Beers' counsel informed the court that defendant wished to "fire" him, stating that defendant's dissatisfaction stemmed from the strategic decision not to introduce evidence of Doe's happiness while with Beers. As noted above in Part II.A., defendant did not proffer this evidence to ensure that the government could not introduce its evidence that defendant had abused Doe. The district court informed Beers that it was too late to dismiss his attorney. It elaborated, "[W]e've come

- 8 -

through the trial. We are ready to instruct and argue so his request that you be terminated will be denied." Supp. App., Vol. IV, at 487. The court further stated that defendant's attorneys represented him very well. This exchange occurred between the district court and defendant's attorney. The court refused to hear from Beers directly. Defendant contends on appeal that the failure of the district court to hear from Beers personally constitutes reversible error. We disagree.

As defendant correctly argues, it is unclear from the colloquy between defense counsel and the court whether Beers desired to substitute counsel or to proceed pro se. However, we affirm under either scenario. "We review a district court's refusal to substitute counsel for an abuse of discretion." United States v. Johnson, 961 F.2d 1488, 1490 (10th Cir. 1992); see also United States v. Blaze, 143 F.3d 585, 593 (10th Cir. 1998). "'To warrant a substitution of counsel, the defendant must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict.'" Blaze, 143 F.3d at 593 (quoting United States v. Padilla, 819 F.2d 952, 955 (10th Cir. 1987)). We also must strongly consider the timeliness of defendant's motion. See Johnson, 961 F.2d at 1490.

While we may perhaps prefer the district court to allow defendant to fully explain his reasons for dissatisfaction with counsel, "formal inquiry is not essential where the defendant otherwise stated his reasons for dissatisfaction on

the record." United States v. Willie , 941 F.2d 1384, 1391 (10th Cir. 1991) (internal quotation marks and citations omitted); see also Padilla , 819 F.2d at 956 n.1 ("While the court did not conduct a formal inquiry into defendant's reasons for terminating appointed and retained counsel, the omission is harmless where the defendant otherwise stated his reasons for dissatisfaction."). In Willie , we upheld the trial court's denial of defendant's request for replacement of counsel because defendant had stated on the record that he was dissatisfied with his counsel's interpretation of the law. See 941 F.2d at 1391. Here, the defense counsel informed the court of the reasons for Beers' dissatisfaction. It involved a strategic decision, given the in limine evidentiary ruling discussed above, not to put forth evidence that Doe was happy while Beers held him. This reason is not one that warrants substitution of counsel, especially considering that defense counsel consulted with Beers in making its decision not to introduce the evidence.

Moreover, the untimeliness of defendant's request – directly before closing arguments and jury instructions – further bolsters the district court's determination. Beers had already received an earlier substitution of counsel prior to trial, and substitution at this point would have seriously delayed proceedings, confused the jury, and prejudiced the prosecution. Courts have to "balance the need for efficient administration of the criminal justice system against the defendant's right to counsel," Padilla , 819 F.2d at 956, but "'there must be some

- 10 -

limit to the defendant's ability to manipulate the judicial system,'" Willie , 941 F.2d at 1391 (quoting United States v. Gallop , 838 F.2d 105, 110 (4th Cir. 1988). The court specifically noted that it felt defense counsel had competently represented defendant. Thus, we hold that the district court did not abuse its discretion in refusing to allow Beers to substitute counsel.

Next, we address the district court decision assuming defendant wished to fire his counsel in order to represent himself. Although "[u]nder the Sixth Amendment, a criminal defendant has a constitutional right to waive counsel and represent [himself]," United States v. Callwood , 66 F.3d 1110, 1113 (10th Cir. 1995), "the right to self-representation is unqualified only if demanded *before* trial," United States v. Mayes , 917 F.2d 457, 462 (10th Cir. 1990) (internal quotation marks and citation omitted). When defendant does not assert this right before trial, we review the district court's decision whether to allow defendant to proceed pro se for an abuse of discretion. See Callwood , 66 F.3d at 1113; Mayes , 917 F.2d at 462.

To invoke the right of self-representation, defendant must clearly and unequivocally assert his intention in a timely manner. See, e.g. , Callwood , 66 F.3d at 1113. In this case, even giving defendant every benefit and assuming that he would have clearly and unequivocally requested to proceed pro se had he personally addressed the court, the request would have been extremely untimely.

- 11 -

The district court was clearly concerned with the timeliness of the request, twice stating that it was simply too late. The trial had gone on for several days, and both sides had rested their arguments. Beers' reason for seeking to dismiss his attorney – a disagreement regarding strategy – could not outweigh the prejudice and confusion that would result from firing his attorney at this late juncture in the trial, especially given that the trial court specifically stated that defense counsel represented defendant very well throughout the trial. See Mayes, 917 F.2d at 462. In short, we affirm the district court's denial of defendant's motion to dismiss his attorney.

**E. Brady Violation**

Finally, defendant claims that the federal prosecutor violated Brady v. Maryland, 373 U.S. 83 (1963), and its progeny by failing to disclose evidence that would have impeached one of the government's witnesses, Twila Lujan. Beers moved for a new trial after discovering the alleged impeachment evidence. The district court denied the motion. We review de novo the denial of a motion for a new trial based on a claimed Brady violation. See United States v. Gutierrez-Hermosillo, 142 F.3d 1225, 1232 (10th Cir.), cert. denied, 119 S. Ct. 230 (1998).

The alleged impeachment evidence forming the basis of defendant's complaint consists of seven items, including a video, pertaining to an unrelated attack on Lujan by one of her customers. Lujan stated at trial that her customer

- 12 -

physically and sexually attacked her after picking her up. According to defendant, the impeachment evidence shows that the acts were consensual. The Albuquerque Police Department investigated and the State of New Mexico prosecuted the customer for these acts. The Albuquerque Police Department possessed the evidence in question, and there is no indication that the investigation was a joint effort between the state and federal government or that the federal prosecutor possessed the complete investigation materials. The federal government in this case provided "open file" discovery to the defense and informed the district court that it had provided the defense "every single report in [its] possession." Supp. App., Vol. III, at 198.

To show a Brady violation, "defendant bears the burden of establishing: 1) that the prosecution suppressed evidence; 2) that the evidence was favorable to the accused; and 3) that the evidence was material." Smith v. Secretary of N.M. Dep't of Corrections, 50 F.3d 801, 824 (10th Cir. 1995) (internal quotation marks, footnote, and citation omitted); accord United States v. Gonzalez-Montoya, 161 F.3d 643, 649 (10th Cir. 1998), cert. denied, 119 S. Ct. 1284 (1999). However, "[t]he Constitution, as interpreted in Brady, does not require the prosecution to divulge every possible shred of evidence that could conceivably benefit the defendant." Smith, 50 F.3d at 823. The prosecution must only reveal information that it had in its possession or knowledge – whether actual or constructive. See

- 13 -

id. at 824.  Here, the federal government obtained one Albuquerque police report on the Lujan incident through its investigation, and the evidence shows it made that report available to defendant through its open file policy.  The prosecutor further disclosed his other materials indicating that Lujan had been attacked by a customer.  Hence, the government did not suppress this material.

As for the rest of the materials related to the Lujan incident, the federal prosecutors did not have the materials in their possession, and defendant provides no evidence that the federal government knew of their existence.  Information possessed by other branches of the federal government, including investigating officers, is typically imputed to the prosecutors of the case.  See id. at 825.  However, we decline to extend this principle for federal prosecutors to exculpatory materials in the possession of the state government.  It is unrealistic to expect federal prosecutors to know all information possessed by state officials affecting a federal case, especially when the information results from an unrelated state investigation.  We thus hold that the state's knowledge and possession of potential impeachment evidence cannot be imputed to a federal prosecutor for purposes of establishing a Brady violation. [2]  See United States v. Kern, 12 F.3d

---

[2]We note that there is no evidence that the federal government participated in a joint investigation of Lujan with New Mexico state officials.  Therefore, we do not decide whether we would impute knowledge possessed by state law enforcement officials in that situation.

122, 126 (8th Cir. 1993) ("We do not accept the defendants' proposal that we impute the knowledge of the State of Nebraska to a federal prosecutor."); United States v. Aichele, 941 F.3d 761, 764 (9th Cir. 1991) (finding no Brady violation because material sought was under control of state officials, not federal prosecutor); United States v. Walker, 720 F.2d 1527, 1535 (11th Cir. 1983) (declining to impute knowledge of deal between witness and state officials to the federal prosecutor); cf. United States v. Avellino, 136 F.3d 249 (2d Cir. 1998) ("[K]nowledge on the part of persons employed by a different office of the government does not in all instances warrant the imputation of knowledge to the prosecutor, for the imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require us to adopt a monolithic view of government that would condemn the prosecution of criminal cases to a state of paralysis." (internal quotation marks and citation omitted)). Therefore, the prosecution did not suppress the alleged Brady material.

Because we find that the prosecutor did not suppress any information, we need not address the remaining Brady requirements or the government's other arguments relating to this issue. We affirm the district court's denial of a new trial.

For the reasons discussed above, we AFFIRM.