**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 6 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

MATTHEW LEWIS NORAH,

    Defendant-Appellant.

No. 99-8019

(D.C. No. 97-CR-28)
(D.Wyo.)

---

**ORDER AND JUDGMENT** *

---

Before **ANDERSON, KELLY** and **BRISCOE,** Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Matthew Lewis Norah, a Shoshone Indian, appeals his conviction for abusive sexual contact with a minor. Because we find the evidence was sufficient to support a conviction, we affirm the jury's verdict and deny Norah's appeal.

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

I.

A federal grand jury issued a three-count indictment against Norah in March 1997. Counts I and II of the indictment charged Norah with abusive sexual contact of a girl under the age of 12 (hereinafter referred to as "EDC") in violation of 18 U.S.C. §§ 1153, 2244(a)(1), and 2246(2)(D). [1] These Counts alleged that Norah knowingly touched EDC's genitalia on or about November 1, 1996 through November 30, 1996. Record on Appeal ("ROA"), Vol. 1, Doc. 1, at 1. Count III of the indictment charged Norah with the same offense, and alleged that Norah knowingly touched EDC's genitalia on or about December 5,

---

[1] Section 1153 governs "Offenses committed within Indian country." The statute provides that "[a]ny Indian who commits against the person or property of another Indian or other person" any one of several specified offenses "shall be subject to the same law and penalties as all other persons committing . . . [those] offenses, within the exclusive jurisdiction of the United States." 18 U.S.C. § 1153(a). Section 2244 governs "Abusive sexual contact" and states in relevant part:

> **(a) Sexual conduct in circumstances where sexual acts are punished by this chapter.** – Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, knowingly engages in or causes sexual contact with or by another person, if so to do would violate –
> (1) section 2241 of this title had the sexual contact been a sexual act, shall be fined under this title, imprisoned not more than ten years, or both . . . .

Section 2246(2)(D) defines a "sexual act" as "the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person . . . ."

1996.  Id. at 2-3.  The December 5, 1996 offense allegedly occurred at a recreational facility called Rocky Mountain Hall ("Rock Hall") on the Wind River Indian Reservation ("Reservation") in Fort Washakie, Wyoming.  Norah, who worked as a janitor at the Hall, pleaded not guilty to each Count.  Id., Doc. 11.

Norah's trial commenced in November 1998.  After a four-day trial, the jury acquitted Norah of the charges alleged in Counts I and II.  The jury convicted Norah of the charges alleged in Count III.  Id., Doc. 120;  id., Vol. 5, at 760-63.  The district court sentenced Norah to a prison term of 27 months with two years of supervised release.  The court also imposed a fine of $1,000 and a special assessment of $100.  Id., Vol. 1, Doc. 125.  The court entered final judgment in February 1999,  id., Doc. 126, from which Norah timely appealed.  Id., Doc. 127.

## II.

The sole issue on appeal is whether the evidence was sufficient to support Norah's conviction on Count III.  We review the record de novo to assess the sufficiency of the evidence.  United States v. Beers, 189 F.3d 1297, 1301 (10th Cir. 1999);  United States v. Fabiano, 169 F.3d 1299, 1305 (10th Cir. 1999).  The relevant inquiry is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the

3

essential elements of the crime[s] beyond a reasonable doubt." United States v. Dozal, 173 F.3d 787, 797 (10th Cir. 1999) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)); accord United States v. Torres, 53 F.3d 1129, 1133-34 (10th Cir. 1995). "We do not use this evaluation as a chance to second-guess the jury's credibility determinations, nor do we reassess the jury's conclusions about the weight of the evidence presented." Beers, 189 F.3d at 1301 (quoting United States v. Yoakam, 116 F.3d 1346, 1349 (10th Cir. 1997)); see also Torres, 53 F.3d at 1134 (stating that "[a]n appellate court may not decide the credibility of witnesses as that is the exclusive task of the fact trier") (citation omitted).

Four witnesses provided testimony for the prosecution relevant to Count III. Among these witnesses was Susan Donnell, a licensed psychologist who previously worked for the Indian Health Service at the Reservation and served as the director of the school psychology program. Donnell counseled EDC on issues unrelated to the indictment during the 1996 school year, and resumed meetings with EDC in November 1996. ROA, Vol. 3, at 400-01. At a meeting with EDC on December 6, 1996, Donnell observed that the child was uncharacteristically withdrawn. EDC indicated that she wanted to tell Donnell something, but had difficulty expressing what was bothering her. In response to a question from Donnell, EDC stated that it would be easier for her to write it down. Donnell then wrote out a series of questions, to which EDC penned

4

responses.  Id. at 401-03.  In this transcript, which was admitted into evidence at trial without objection,  id. at 354, EDC (1) described Norah as a "big guy, tall and really chubby" who "works at Rock Hall,"  id. at 404; (2) stated that Norah touched a "privet" (sic) area of her body with his hands "in a way that he shouldn't have,"  id.; Government's Exhibit 1 at 1;  [2] (3) disclosed that Norah touched her in this manner multiple times in the office at Rock Hall and instructed her "not to tell anybody," ROA, Vol. 3, at 406-07; (4) indicated that she was contemplating suicide as a result of these incidents,  id. at 410-12; and (5) stated that the last time she thought of killing herself was the evening of December 5, 1996 while she was "watching [her] mom coach" a basketball game at the Hall.  Id. at 411.

EDC's testimony was consistent with Donnell's.  EDC stated that "one particular bad touch" occurred at Rock Hall "close in time" to the December 6, 1996 meeting with Donnell.  Id. at 320-21.  EDC testified that (1) this "bad touch" occurred in the office at the Hall,  id. at 321-22; (2) she was at the Hall because her mother was coaching a basketball team,  id. at 323; (3) she entered the office to look at the clock because she had to "be back at a certain time,"  id. at 322-23; (4) Norah was the person in the office that evening who touched her

---

[2] When asked by Donnell to illustrate what she meant by "privates," EDC drew a picture showing Norah's hand touching her between her legs. ROA, Vol. 3, at 407-08.

5

"where he's not supposed to touch," id. at 321-24; [3] and (5) Norah previously touched her in the same manner on multiple occasions at the Hall. Id. at 324, 326, 327. EDC likewise confirmed that she wrote, but did not deliver, a letter to Donnell stating that she wanted to kill herself because Norah touched her inappropriately. Id. at 335-37; Government's Exhibit 5.

Jack Craig, a criminal investigator for the Bureau of Indian Affairs, corroborated EDC's testimony. After Donnell informed him that EDC may have been the victim of sexual abuse, Craig interviewed EDC on December 10, 1996. ROA, Vol. 4, at 561. During the interview, EDC drew a picture of herself with an "X" between her legs to show where she had been touched. Id. at 562-64. She wrote that the person who touched her "private parts" was named "Matthew," and described Norah as tall and chubby. Id. at 564-65, 568. She repeated that (1) Norah touched her in the office at Rock Hall, id. at 565-66; (2) she was at the Hall because her mother was coaching a basketball team, id. at 566, 568; (3) she entered the office to see what time it was, id. at 568; (4) Norah told her not to say anything about the incident, id.; and (5) Norah touched her in the same manner on other occasions in the past. Id. at 569. Craig further testified that he knew from "personal experiences" that Norah frequently "stayed after the normal

---

[3] Once again, when asked to illustrate what she meant, EDC drew a picture indicating that Norah touched her crotch. ROA, Vol. 3, at 325-26; Government's Exhibit 12.

6

working hours" at Rock Hall.    Id. at 607.

The fourth witness to testify about matters related to Count III was EDC's mother.  The mother testified that she took EDC with her when she traveled to Rock Hall to coach basketball on December 5, 1996.    Id. at 523-25.  The mother stated that she saw Norah at the Hall at approximately 6:15 p.m.    Id. at 526.  She also stated that it was not unusual to see Norah at the facility when evening activities were taking place.    Id.

Norah's challenge to the sufficiency of this evidence is unambiguous. Norah argues that "all agree" the alleged offense must have occurred between 6:15 p.m. and 8:00 p.m. on the night in question,    see Brief of Appellant at 6, and that none of the government's adult witnesses saw him at Rock Hall during that time period.  Norah notes that a defense witness, Walter Dick Tidzump, testified that (1) Norah's time cards showed that he "clocked out" of work at approximately 4:45 p.m. on December 5, 1996, ROA, Vol. 4, at 622-23; (2) Tidzump visited with Norah in the office at Rock Hall until approximately 5:30 p.m. that evening,   id. at 623-24; and (3) when Tidzump departed at approximately 5:30 p.m., Norah was with another janitor named Lela Porter and appeared to be preparing to leave.    Id. at 624, 628, 630-31.  Porter, in turn, testified that (1) she was with Norah when he "clocked out" on December 5, 1996, id. at 637; (2) she and Norah left the Hall together at approximately 6:00

p.m. and left in separate vehicles, id. at 638; and (3) because they "live[d] on the same path," she followed Norah on the road until she arrived at her house. Id. at 638-39. [4]

Norah's argument is unpersuasive. First and foremost, EDC testified that Norah molested her in the office at Rock Hall on the evening of December 5, 1996. Neither Tidzump nor Porter directly contradicted this testimony. For example, Tidzump stated at trial that he had "no knowledge" of Norah's activities after 5:30 p.m., and that Norah frequently appeared in the Hall at night to assist with recreational programs. Id. at 629. Similarly, Porter's testimony did not foreclose the possibility that Norah returned to the Hall after he purportedly drove home around 6:00 p.m. Second, the jury was free to disbelieve the testimony of Norah's witnesses. That the jury disbelieved Porter seems likely, because the prosecution adduced evidence at trial to show that (1) Porter was not contacted about the matters alleged in the indictment until she was served with a subpoena several months after December 5, 1996, id. at 640-41; (2) the evening

_____

[4] In addition, Norah contends that certain admissions he apparently made in an interview with investigator Craig are unreliable. Norah argues that the circumstances surrounding the interview were "highly suspect," and that the purported admissions did not corroborate EDC's testimony. See Brief of Appellant at 9-10. We need not address these arguments. First, the district court suppressed most of Norah's pre-trial statements, including Norah's alleged admission "regarding a December 1996 incident." ROA, Vol. 1, Doc. 86, at 14-15. Second, and most important, Norah's alleged statements to investigator Craig are simply irrelevant to our analysis of the sufficiency of the evidence.

in question was in many respects unremarkable and Porter could give no reason why she could recall details about Norah's behavior that night, id. at 643; and (3) Porter was married to a man who had been prosecuted by the United States Attorney's office for the District of Wyoming. Id. at 645-46. In short, even if Norah's witnesses had directly contradicted EDC (which they did not), it was the jury's prerogative to reject their account of December 5, 1996 and to believe EDC's version of the facts. To reiterate, "[o]nce the jury has spoken, this court may not reweigh the credibility of the witnesses." Torres, 53 F.3d at 1134 (quoting United States v. Youngpeter, 986 F.2d 349, 352-53 (10th Cir. 1993)).

AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

9