**2018 UT App 208**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
VRATISLAV ROGER BILEK,
Appellant.

Opinion
No. 20160991-CA
Filed November 1, 2018

Third District Court, West Jordan Department
The Honorable L. Douglas Hogan
No. 161400438

Nathalie S. Skibine and Heather J. Chesnut,
Attorneys for Appellant

Sean D. Reyes and Marian Decker, Attorneys
for Appellee

JUDGE DIANA HAGEN authored this Opinion, in which
JUDGES KATE A. TOOMEY and JILL M. POHLMAN concurred.

HAGEN, Judge:

¶1      Probation officers discovered Vratislav Roger Bilek in a motel room with drugs, drug paraphernalia, and a disoriented woman (E.C.). A search of Bilek's cell phone revealed numerous nude photographs and video recordings of E.C. in which she appeared to be unconscious. Subsequently, Bilek was convicted of two counts of voyeurism, one count of distribution of a controlled substance, and one count of possession of drug paraphernalia.

¶2      With respect to his voyeurism convictions, Bilek argues that the State presented insufficient evidence to prove that he used a "concealed or disguised" electronic device to secretly or

surreptitiously record or view E.C. Specifically, Bilek argues that the "concealed or disguised" element of class A misdemeanor voyeurism cannot be satisfied by proving only that he provided E.C. with drugs to render her unconscious. We hold that evidence that E.C. was unconscious is sufficient to prove that Bilek secretly or surreptitiously made the recordings, but it does not satisfy the separate element that requires the use of a concealed or disguised electronic device. Accordingly, we vacate his voyeurism convictions.

¶3     Bilek also argues for reversal of his other convictions because the State wrongfully admitted evidence that he was on probation at the time of the offenses and because the district court denied his right to self-representation. We reject these challenges and affirm Bilek's convictions for distribution of a controlled substance and possession of drug paraphernalia.

BACKGROUND[1]

¶4     In December 2015, Bilek was sentenced to sixty months of probation after pleading guilty to felony kidnapping.[2] As a condition of probation, Bilek agreed that no women would stay overnight with him without his probation officer's approval and that he would abstain from illegal use or possession of drugs or drug paraphernalia.

---

1. "On review of a jury verdict, we recite the evidence, and all the reasonable inferences that flow from the evidence, in the light most favorable to the verdict." *State v. Wilder*, 2018 UT 17, ¶ 4 n.1, 420 P.3d 1064.

2. In that case, the State alleged that Bilek "lured women to his apartment, detained them for several days, and assaulted them." *State v. Bilek*, 2017 UT App 37, ¶ 3, 392 P.3d 990 (per curiam).

¶5 Less than two months later, two probation officers conducted a routine check and discovered Bilek in a motel room with E.C. When they entered Bilek's room, the officers saw that E.C. was wearing a tank top, sweatpants, and no shoes. According to the officers, it "appeared like she had just woke[n] up" and she "seemed a little bit out of it." They also observed heroin, crystal methamphetamine, crack cocaine, syringes, a spoon, a metal pipe, and plastic paper next to the bed. After speaking with Bilek and E.C., the officers searched the contents of Bilek's cell phone and discovered 179 photographs and 9 videos of E.C. in Bilek's motel room. In most of the photographs and videos, E.C. was nude, either alone or in compromising positions with Bilek, and appeared to be unconscious or asleep. After reviewing the photographs and speaking with E.C., the officers allowed her to leave, but they placed Bilek under arrest for violating his probation.

¶6 Based on E.C.'s statements and the drugs, drug paraphernalia, photographs, and videos discovered in the motel room, the State charged Bilek with one count of forcible sexual abuse, a second degree felony, *see* Utah Code Ann. § 76-5-404 (LexisNexis 2014); one count of distribution of or arranging to distribute a controlled substance, a second degree felony, *see id.* § 58-37-8(1)(a)(ii) (2016); two counts of voyeurism, class A misdemeanors, *see id.* § 76-9-702.7(2) (2014);[3] and one count of possession of drug paraphernalia, a class B misdemeanor, *see id.* § 58-37a-5(1) (2016).[4]

---

3. Utah Code section 76-9-702.7(1) has been amended since Bilek's arrest, eliminating the language at issue in this case. *See* Utah Code Ann. § 76-9-702.7 (LexisNexis 2017).

4. In addition to the charges the State filed in this case, Adult Probation and Parole filed violations in Bilek's 2015 case. The

(continued…)

¶7    The district court appointed counsel to represent Bilek. On five occasions before trial, Bilek requested to substitute counsel. Bilek complained that his attorney refused to provide him with the discovery he requested, to file the motions he asked be filed, to subpoena witnesses he identified, and to "excuse herself as ineffective counsel." After addressing the matter with Bilek and his attorney, the district court denied Bilek's requests, finding that there was no conflict that necessitated a change in counsel.

¶8    Before trial, Bilek filed a motion in limine to exclude evidence of his prior convictions and probation status. The district court granted the motion with respect to Bilek's prior convictions, but it declined to exclude evidence that Bilek was on probation. The court explained that excluding evidence that the officers were conducting a probation check "would subject the jury to wondering and speculating in improper areas" and that it would be "a better result, a less prejudicial result by actually just saying who [the officers] are and why they [were in Bilek's motel room]."

¶9    At trial, E.C. testified that she met Bilek in December 2015. Since then, they had many sexual encounters in which Bilek agreed to pay her money or drugs in exchange for oral sex.

---

(…continued)
district court found by a preponderance of the evidence that Bilek violated the terms of his probation by purchasing and using illegal drugs, possessing drugs and drug paraphernalia, and allowing a woman to stay overnight in his motel room without permission. Bilek challenged the district court's findings on appeal and this court affirmed. *See Bilek*, 2017 UT App 37, ¶ 12.

¶10   Two days before Bilek was arrested in this case, he had paid to bail E.C. out of jail. When Bilek met her at the police station, E.C. told him she was feeling sick from withdrawal, so Bilek offered her methamphetamine and "a place to shower and sleep." E.C. went to Bilek's motel room, "injected [the] meth" that he provided, and then drove with him to another location where he purchased heroin and crack cocaine. E.C. also went with Bilek to purchase supplies to assemble a crack pipe.

¶11   After purchasing the supplies, the two returned to Bilek's motel room where E.C. injected methamphetamine and heroin and smoked crack cocaine. E.C. testified that the methamphetamine Bilek provided that night made her feel "cold and sick and tired" when "[m]eth usually makes [her] feel the opposite." E.C. also testified that she witnessed Bilek inject methamphetamine, but that the drugs he used appeared to come from a separate stash.

¶12   During the time she remained in Bilek's motel room, E.C. was "mostly asleep." On the first night, E.C. performed oral sex on Bilek as payment for the drugs. The only other sexual activity she recalled occurred when she awoke to Bilek rubbing lotion near her genitals and when Bilek requested she inject his penis with methamphetamine. E.C. testified that she removed her clothes only twice in Bilek's motel room, on the first night when she performed oral sex on Bilek and the single time she took a shower. In both instances, she recalled re-dressing immediately afterward.

¶13   E.C. also testified that she had not consented to being photographed or video recorded. E.C. acknowledged that she had allowed Bilek to photograph her nude in exchange for money during a prior sexual encounter, but she maintained that she had not consented to additional nude photographs and never agreed to allow Bilek to photograph or film her while she was unconscious.

¶14   In addition to E.C.'s testimony, the State presented the photographs and videos found on Bilek's cell phone and introduced expert testimony about the physical effects of the drugs E.C. ingested. The probation officers also testified about their observations. The officers explained that they went to Bilek's motel room to conduct a routine probation check, but they did not disclose that Bilek was on probation for a kidnapping conviction or that Bilek was on felony probation. During one officer's testimony, the jury submitted two questions asking for more information about why Bilek was on probation. In response, the district court instructed the jurors that it could not provide an answer to their question and that they were not to consider "any thoughts [they] might have about that or about the subject of that question in [their] deliberations."

¶15   When the State rested, Bilek moved for a directed verdict as to the forcible sexual abuse, distribution of a controlled substance, and voyeurism charges. Before the district court could rule, Bilek objected to the statements his attorney made in her argument in support of the motion. The district court explained that it had already instructed Bilek that it was not going to recognize objections unless they came from his attorney but would construe Bilek's objection as a request for "an opportunity for [him] to speak with counsel." Bilek's attorney explained to the court that Bilek was "agitated about what's happening" and would like to "argue about the facts," despite counsel's assessment that those facts "would be harmful to his case." Bilek again objected and stated that he was "firing" his attorney. The district court asked whether Bilek was requesting to represent himself, and Bilek confirmed that he was. The court ruled that it was "not going to allow that to happen at this point." Bilek's defense counsel continued to represent him through the duration of the trial.

¶16   After denying Bilek's request for self-representation, the district court denied the motion for a directed verdict. As to the

voyeurism charges, the court ruled that providing "a controlled substance that would render a person unaware as to what's going on" was sufficient evidence of "concealment or disguise to secretly or surreptitiously videotape, film, photograph or record." The district court also found that E.C.'s testimony along with the drugs and paraphernalia discovered in Bilek's motel room provided sufficient evidence of forcible sexual abuse and distribution of a controlled substance.

¶17    The jury convicted Bilek of two counts of voyeurism, one count of distribution of a controlled substance, and one count of possession of drug paraphernalia. The jury acquitted him of forcible sexual abuse. Bilek appeals.

ISSUES AND STANDARDS OF REVIEW

¶18    Bilek raises three issues on appeal. First, he contends that the State presented insufficient evidence to support his convictions for class A misdemeanor voyeurism. Specifically, Bilek contends that the State's evidence that E.C. was unconscious when he used his phone to take photographs and videos of her was insufficient to prove that he "concealed or disguised" his phone while doing so. To assess claims of insufficient evidence, "we review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict." *State v. Robertson*, 2018 UT App 91, ¶ 20, 427 P.3d 361 (quotation simplified). "We will reverse the jury's verdict only when the evidence, so viewed, is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he or she was convicted." *Mackin v. State*, 2016 UT 47, ¶ 20, 387 P.3d 986 (quotation simplified).

¶19    Second, Bilek contends that the district court erred when it allowed the officers to testify that he was on probation. We

recognize that "[t]he trial judge is in a better position than we are to assess the avowed basis for evidence of prior misconduct." *State v. Thornton*, 2017 UT 9, ¶ 56, 391 P.3d 1016. As such, we review the question of "whether the prior misconduct evidence at issue was properly admitted at trial" for an abuse of discretion. *Id.* Even if the evidence was improperly admitted, we will not overturn a conviction unless a "reasonable likelihood exists that the error affected the outcome of the proceedings." *State v. Calvert*, 2017 UT App 212, ¶ 38, 407 P.3d 1098 (quotation simplified).

¶20 Finally, Bilek contends that the district court erred when it denied his request for self-representation after the State rested. "When [a] defendant does not assert [the right to self-representation] before trial, we review the district court's decision whether to allow defendant to proceed pro se for an abuse of discretion." *United States v. Beers*, 189 F.3d 1297, 1303 (10th Cir. 1999).

ANALYSIS

I. Sufficiency of the Evidence Supporting Class A
Misdemeanor Voyeurism

¶21 Bilek contends that we should reverse his conviction for voyeurism because the "State never proved that [he] used a 'concealed or disguised' camera, a requirement under the [voyeurism] statute." The State disagrees but argues in the alternative that, if we determine that the evidence was insufficient to support Bilek's class A misdemeanor voyeurism convictions, we should order the district court to enter convictions for class B misdemeanor voyeurism. We first address whether the State presented sufficient evidence to satisfy the elements of class A misdemeanor voyeurism. We conclude that it did not and then turn to the appropriate remedy.

A.  Evidence Supporting the "Concealed or Disguised" Element

¶22  When Bilek committed the acts charged, a person committed class A misdemeanor voyeurism by

> (1) intentionally us[ing] a camcorder, motion picture camera, photographic camera of any type, or other equipment *that is concealed or disguised* to secretly or surreptitiously videotape, film, photograph, record, or view by electronic means an individual:
>
> > (a) for the purpose of viewing any portion of the individual's body regarding which the individual has a reasonable expectation of privacy, whether or not that portion of the body is covered with clothing;
> >
> > (b) without the knowledge or consent of the individual; and
> >
> > (c) under circumstances in which the individual has a reasonable expectation of privacy.

Utah Code Ann. § 76-9-702.7(1), (2) (LexisNexis 2014) (emphasis added). The State contends, as it argued at trial, that Bilek's actions met the "concealed or disguised" element of the voyeurism statute because he "concealed his phone when he used it to take nude photographs and videos of his victim after the drugs he gave her left her unconscious or otherwise unaware." The State's argument relies on the photographs and videos the officers discovered on Bilek's phone, including a video that seems to depict Bilek hiding his phone when E.C. begins to stir from her unconscious state. The State also relies on

E.C.'s testimony that she had not consented to being photographed or recorded nude, that she had been rendered unconscious by the narcotics Bilek provided, and that she was unaware that Bilek had photographed and recorded her nude while she was unconscious.

¶23 Assuming that E.C. was unconscious and did not consent to being photographed and recorded nude, Bilek argues that her unconscious state cannot support a finding that he concealed or disguised his phone camera. Rather, Bilek contends that all of the photographs and videos of E.C. were taken while he "was using the phone openly" and that "concealment should focus on 'ordinary observation,' not the subjective observation of the person being photographed." Because the State relied solely on E.C. being unconscious to prove the device was concealed or disguised, Bilek contends there was insufficient evidence to support that element.

¶24 Ultimately, whether photographing an unconscious person qualifies as using "concealed or disguised" equipment is a question of statutory interpretation. "When interpreting a statute, we rely first on the statute's plain language as the best evidence of the legislature's intent." *State v. Liti*, 2015 UT App 186, ¶ 14, 355 P.3d 1078. "We interpret statutes to give meaning to all parts, and avoid rendering portions of the statute superfluous." *LeBeau v. State*, 2014 UT 39, ¶ 20, 337 P.3d 254 (quotation simplified). "To do so, we read the plain language of the statute as a whole[.]" *Id.* (quotation simplified). "We presume that the Legislature used each word advisedly and give effect to each term according to its ordinary and accepted meaning." *Id.* (quotation simplified).

¶25 The voyeurism statute in effect at the time of Bilek's offense made it a class A misdemeanor to violate subsection (1). *See* Utah Code Ann. § 76-9-702.7(1). That subsection prohibits using "a camcorder, motion picture camera, photographic

camera of any type, or other equipment that is concealed or disguised to secretly or surreptitiously videotape, film, photograph, record, or view by electronic means an individual." *Id.* The adjectives "concealed or disguised" and the adverbs "secretly or surreptitiously" modify separate elements of the statute. While "concealed or disguised" is a postpositive modifier that applies to the noun sequence "camcorder, motion picture camera, photographic camera of any type, or other equipment," "secretly or surreptitiously" is a prepositive modifier that applies to the verb sequence "videotape, film, photograph, record, or view." *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 147 (2012) (explaining the series-qualifier cannon of statutory construction). Although both sequences and their modifiers require that the perpetrator act generally to prevent the victim from recognizing that he or she is being recorded or viewed with electronic equipment, the requirement that the perpetrator conceal or disguise the equipment is separate and in addition to the requirement that the perpetrator secretly or surreptitiously record or view the victim. Here, evidence that E.C. was unconscious at the time is sufficient to prove that the photographs and videos were "secretly or surreptitiously" taken. But it does not prove that Bilek's phone camera was "concealed or disguised" under the ordinary and accepted meaning of those words.

¶26　Adopting the State's position—that Bilek concealed or disguised his phone camera by waiting to take illicit photographs and video recordings of E.C. until she was unconscious—would render superfluous the "secretly or surreptitiously" element of the statute. Because we must interpret the statute "to give meaning to all parts," both the noun and verb sequences and their modifiers must be given individual meaning. *LeBeau*, 2014 UT 39, ¶ 20 (quotation simplified).

¶27 Such an interpretation does not produce unintended absurd results. *See Bagley v. Bagley*, 2016 UT 48, ¶ 28, 387 P.3d 1000 (explaining that the absurdity doctrine allows a court to read a statute contrary to its plain language only if the legislature could not have reasonably intended the statute to operate in such a manner). Voyeuristic conduct that fails to meet the elements set forth in subsection (1) may still be subject to criminal penalty under subsection (4), which proscribes viewing or attempting "to view an individual, with or without the use of any instrumentality . . . under circumstances not amounting to a violation of Subsection (1)." Utah Code Ann. § 76-9-702.7(4). Under this statutory scheme, perpetrators who do not use concealed or disguised equipment do not necessarily escape criminal liability, but are subject to a lesser penalty under subsection (4). The legislature could have reasonably intended the statute to operate in this manner, punishing the use of concealed or disguised equipment more severely than other voyeuristic conduct.

¶28 Accordingly, the evidence the State presented at trial was insufficient to prove beyond a reasonable doubt that Bilek concealed or disguised his phone camera to photograph and record E.C. as Utah Code section 76-9-702.7(1) requires.

B.     The Remedy

¶29 Because we have determined that the State's evidence was insufficient to sustain a conviction under subsection (1) of Utah Code section 76-9-702.7, we address the State's contention that we should direct the district court to enter convictions for class B misdemeanor voyeurism pursuant to subsection (4) of that statute. At the time of Bilek's conviction, subsection (4) provided:

> (4) A person is guilty of voyeurism who, under circumstances not amounting to a violation of

Subsection (1), views or attempts to view an individual, with or without the use of any instrumentality:

> (a) with the intent of viewing any portion of the individual's body regarding which the individual has a reasonable expectation of privacy, whether or not that portion of the body is covered with clothing;
>
> (b) without the knowledge or consent of the individual; and
>
> (c) under circumstances in which the individual has a reasonable expectation of privacy.

Utah Code Ann. § 76-9-702.7(4) (LexisNexis 2014).

¶30  If a defendant's conviction must be vacated because of an error that occurred in the district court, "we have the power to enter judgment for a lesser included offense if (i) the trier of fact necessarily found facts sufficient to constitute the lesser offense, and (ii) the error did not affect these findings." *State v. Bair*, 2012 UT App 106, ¶ 65, 275 P.3d 1050 (quotation simplified); *see also State v. Dunn*, 850 P.2d 1201, 1209–10 (Utah 1993) ("Numerous state and federal courts have concluded that . . . a court has the power to enter judgment for a lesser included offense [and] . . . [w]e conclude that we have the same power."). To determine whether it is appropriate to enter convictions for a lesser included offense, we "compar[e] the elements" of the crime of conviction and the lesser included offense. *Dunn*, 850 P.2d at 1211. We may direct the district court to enter judgment for a lesser offense only if we determine that the jury necessarily found each element of the lesser included offense and "the record shows [that the defendant] would not be unfairly

prejudiced" by entering a conviction for that lesser offense. *State v. Carruth*, 947 P.2d 690, 694 (Utah Ct. App. 1997).

¶31   Although subsections (1) and (4) have similar elements, the difference in the proscribed conduct is important under the facts of this case. Specifically, when read as a whole, subsection (1) requires, in relevant part, that the perpetrator intentionally use some form of equipment that is "concealed or disguised to secretly or surreptitiously . . . *view by electronic means* an individual . . . under circumstances in which the individual has a reasonable expectation of privacy." *See* Utah Code Ann. § 76-9-702.7(1)(c) (emphasis added). In contrast, subsection (4) applies when the perpetrator "*views or attempts to view* an individual . . . under circumstances in which the individual has a reasonable expectation of privacy." *See id.* § 76-9-702.7(4)(c) (emphasis added). In other words, subsection (1) requires proof that E.C.—under the circumstances of this case—had a reasonable expectation of privacy in not having portions of her body viewed with some form of electronic equipment, whereas subsection (4) requires proof that E.C. had a reasonable expectation of privacy in not having portions of her body viewed at all.

¶32   Here, the distinction is significant. The jury could have credited E.C.'s testimony that she never consented to Bilek using his phone to photograph or videotape her, while at the same time believing that she consented to Bilek viewing her body without the use of equipment based on her testimony that she voluntarily disrobed before performing oral sex on Bilek. Moreover, because subsection (4) was not charged, Bilek's defense strategy focused on disproving only the elements of subsection (1), specifically whether he used "concealed or disguised" equipment to commit the offense. And, because the jury was not instructed on a lesser included offense under subsection (4), Bilek was not on notice that he needed to address whether E.C. consented to him viewing her body without the

assistance of equipment. *See State v. Baker*, 671 P.2d 152, 156 (Utah 1983) (holding that a defendant has a "constitutional right to protection from instructions to the jury which might subject him to a conviction of a crime against which he has had no opportunity to defend" (quotation simplified)).

¶33   Under the facts of this case, Bilek would be unfairly prejudiced by entry of class B misdemeanor convictions. We therefore vacate Bilek's convictions for class A misdemeanor voyeurism and remand to the district court for further proceedings.

## II. Bilek's Other Claims of Error

¶34   Although we have already determined that we must vacate Bilek's voyeurism convictions for lack of sufficient evidence, we now address Bilek's additional claims of error because they potentially affect the validity of his convictions for distribution of a controlled substance and possession of drug paraphernalia.

### A.    Admissibility of the Rule 404(b) Evidence

¶35   First, Bilek contends the district court erred when it allowed the State to admit testimony that Bilek was on probation when he committed the offenses.[5] Rule 404(b)(1) of the Utah

---

5. In response to this argument, the State contends that Bilek invited error at trial when defense counsel responded to the district court's request for argument on Bilek's motion in limine to exclude evidence of his probation status by stating: "I certainly sympathize with the State's conundrum if nothing is admitted about the role of the probation officer, so with that in mind I would submit on the brief." Recognizing that application of the doctrine of "invited error precludes appellate review of an

(continued…)

Rules of Evidence prohibits the admission of "a crime, wrong, or other act" committed by an individual to show "that on a particular occasion the person acted in conformity with the character." On the other hand, "when past misconduct evidence is offered for any other purpose—other than to suggest action in conformity with the bad character suggested by his prior bad acts—such evidence is admissible so long as it satisfies" the relevance and prejudice requirements of rules 402 and 403. *State v. Thornton*, 2017 UT 9, ¶ 36, 391 P.3d 1016 (quotation simplified). In addition, "[e]ven if the admission of rule 404(b) evidence by the [district] court was in error, reversal on appeal is not appropriate unless [the defendant] demonstrates that the error materially affected the fairness or outcome of the trial." *State v. Calvert*, 2017 UT App 212, ¶ 38, 407 P.3d 1098 (quotation simplified). We will overturn a conviction based on the improper admission of evidence only if a "reasonable likelihood exists that the error affected the outcome of the proceedings." *Id.* (quotation simplified).

¶36   Here, we do not determine whether Bilek's probation status was properly admitted because there is no reasonable probability that the admission of this evidence affected the jury's verdict on the distribution and paraphernalia charges. The challenged rule 404(b) evidence was limited to the officers' testimony that they were conducting a routine probation check

_____

(…continued)

issue," we decline to apply the doctrine here. *State v. Oliver*, 2018 UT App 101, ¶ 27, 427 P.3d 495 (quotation simplified). Far from inviting error, defense counsel's statement at the hearing on Bilek's motion in limine reinforced the position advocated for in his briefing on the motion, which in itself was a properly made objection to the evidence at issue. Furthermore, after the district court ruled on the motion, it noted that Bilek objected to the ruling and stated that his objection had been preserved.

when they found E.C. in Bilek's motel room. During his opening statement and closing argument, the prosecutor also briefly mentioned that Bilek was on probation. The district court did not admit evidence that Bilek was on probation for the crime of felony kidnapping or evidence of the facts giving rise to his prior conviction. And when the jury asked about Bilek's probation, the district court properly instructed the jurors that they were not to consider his probation status in their deliberations. We presume the jury followed such instructions and did not consider Bilek's probation status in reaching its verdict. *See State v. Beckering*, 2015 UT App 53, ¶ 24, 346 P.3d 672.

¶37 Moreover, the evidence of guilt as to the drug charges was overwhelming. The State's evidence included testimony from E.C. that she had no money to purchase drugs for herself when Bilek bailed her out of jail, that he supplied narcotics for her use, and that she spent days in his motel room using drugs with him. The State also introduced testimony of the probation officers and photographs of the drug paraphernalia and drugs they recovered from Bilek's motel room. And, to support the defense theory that E.C. consented to being photographed and video recorded, Bilek argued that his relationship with E.C. involved providing drugs in exchange for sexual acts and explicit photographs. In closing argument, Bilek's defense counsel expressly argued that E.C. "had consented to injecting [Bilek] in the penis with this drug," that Bilek and E.C. "had a prostitute-client relationship," and that E.C. and Bilek were "in [the hotel room] doing drugs." In fact, defense counsel made no argument at closing for acquittal on the drug charges.

¶38 In sum, the evidence admitted at trial supporting Bilek's drug distribution and possession of drug paraphernalia convictions was overwhelming. Bilek's own defense counsel acknowledged and argued that he had used narcotics with E.C. over the course of their stay in his motel room. Thus, without deciding whether the rule 404(b) evidence was properly

admitted, "we agree with the State that any error in admitting the evidence was harmless under the facts of this case." *See Calvert*, 2017 UT App 212, ¶ 36.

B.    Self-Representation

¶39    Finally, Bilek contends that the district court violated his right to self-representation when it denied his midtrial request to "fire" his attorney and represent himself. The United States Constitution, the Utah Constitution, and Utah statutory law guarantee criminal defendants the right to self-representation. *See* U.S. Const. amend. VI; Utah Const. art. 1, § 12; Utah Code Ann. § 77-1-6(1)(a) (LexisNexis 2017). Because "the right to defend oneself is a personal, constitutional right," the district court must ordinarily honor the defendant's choice unless it "appropriately finds that a defendant has not knowingly and intelligently chosen self-representation." *State v. Bakalov*, 849 P.2d 629, 634 (Utah Ct. App. 1993).

¶40    However, the right to self-representation "is not absolute." *United States v. Akers*, 215 F.3d 1089, 1097 (10th Cir. 2000). The defendant must "clearly and unequivocally" invoke the right of self-representation "in a timely manner." *State v. Bakalov*, 1999 UT 45, ¶ 16, 979 P.2d 799 (quotation simplified). "A motion for self-representation is timely if it is made before the jury is impaneled[.]" *United States v. Simpson*, 845 F.3d 1039, 1053 (10th Cir. 2017) (quotation simplified).

¶41    Here, Bilek's only clear and unequivocal request for self-representation occurred mid-trial, after the State rested.[6] During

---

6. Bilek contends that his motion was timely because he filed two pro se letters with the district court before his mid-trial request in which he claimed that defense counsel was "ineffective" and requested "substitution of ineffective counsel." We are not

(continued…)

defense counsel's argument on Bilek's motion for a directed verdict, Bilek interjected that he was "firing [defense counsel] right now." The district court clarified that Bilek was requesting to represent himself and Bilek confirmed that he was. The court ruled it was "not going to allow that to happen at [that] point."

¶42 The constitutional "right to self-representation is unqualified only if demanded *before* trial." *United States v. Beers*, 189 F.3d 1297, 1303 (10th Cir. 1999) (quotation simplified). When a defendant fails to assert this right in a timely manner, the district court has discretion to deny his or her request. *See id.* Because Bilek waited until midtrial to invoke his right to self-representation, the court acted within its discretion in denying his request at that time.

¶43 Having determined that Bilek was not prejudiced by the admission of evidence of his probation status at trial and that the district court did not err in denying Bilek's mid-trial request to proceed pro se, we affirm his convictions for possession of drug paraphernalia and distribution of a controlled substance.

CONCLUSION

¶44 We conclude that the State presented insufficient evidence to prove beyond a reasonable doubt that Bilek concealed or disguised his phone when he photographed and recorded E.C. nude, and we therefore vacate Bilek's convictions for class A misdemeanor voyeurism and remand for further proceedings.

---

(…continued)

persuaded by this argument, because an invocation of the right to self-representation must be clear and unequivocal. *See State v. Bakalov*, 1999 UT 45, ¶ 16, 979 P.2d 799. None of the letters Bilek filed with the court contain such an invocation.

With respect to the remaining counts, we conclude that Bilek was not prejudiced by the admission of testimony regarding his probation status and that the district court acted within its discretion by denying Bilek's untimely request for self-representation. Accordingly, we affirm Bilek's convictions for distribution of a controlled substance and possession of drug paraphernalia.

——————