**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 29 1997**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

THOMAS W. MITCHELL,

Defendant - Appellant.

No. 96-3260

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D. Ct. No. 95-10119-01)**

---

Submitted on the briefs:[*]

David J. Phillips, Federal Public Defender, and Timothy J. Henry, Assistant Federal Public Defender, Office of the Federal Public Defender for the District of Kansas, for Defendant-Appellant.

Jackie N. Williams, U.S. Attorney, and Debra L. Barnett, Assistant U.S. Attorney, Office of the U.S. Attorney for the District of Kansas, for Plaintiff-Appellee.

---

Before ANDERSON, TACHA, and BRORBY, Circuit Judges.

---

[*]After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.

TACHA, Circuit Judge.

Defendant Thomas Mitchell was convicted of bank robbery by intimidation in violation of 18 U.S.C. § 2113(a) and sentenced to 210 months imprisonment. On appeal, Mitchell argues that: (1) there was insufficient evidence regarding the element of intimidation, and (2) the court improperly excluded extrinsic evidence of a prior inconsistent statement to impeach a government witness. Mitchell also challenges his sentence, arguing that the district court erred in: (1) sentencing Mitchell as a career offender, (2) failing to grant a two-level downward adjustment for acceptance of responsibility, and (3) concluding that the court was without authority to depart downward from the applicable sentencing range. We have jurisdiction under 28 U.S.C. § 1291. We reject each of Mitchell's contentions and affirm.

## I. SUFFICIENCY OF THE EVIDENCE

Mitchell first contends that there was insufficient evidence to support his conviction of bank robbery by intimidation. "We review the sufficiency of the evidence in the light most favorable to the government to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Spring, 80 F.3d 1450, 1459 (10th Cir.), cert. denied, 117 S. Ct. 385 (1996) (quotation omitted).

Mitchell argues that the evidence only supports a conviction for the lesser crime of bank larceny, rather than bank robbery by intimidation, because Ms. Angela Muller, the only employee in the bank at the time of the robbery, could not have been intimidated by his actions. Mitchell asserts that after he entered the bank and approached the teller's window, he merely said, "this is a holdup" and "get back." He also asserts that he did not have a weapon or claim to have a weapon, never yelled, never threatened Ms. Muller with injury, and never touched her at any time during the course of his offense. Mitchell maintains that in this situation, the evidence was insufficient to support a finding of intimidation.

In determining whether the evidence is sufficient to support a finding of intimidation in the context of a bank robbery, we look to three factors: (1) whether the situation appeared dangerous, (2) whether the defendant intended to intimidate, and (3) whether the bank personnel were reasonable in their fear of death or injury. United States v. Smith, 10 F.3d 724, 729 (10th Cir. 1993) (citing United States v. Slater, 692 F.2d 107, 109 (10th Cir. 1982)).

Applying these factors, we conclude that Mitchell's conduct was "aggressive behavior which very well could have been considered as intimidating by the jury." Slater, 692 F.2d at 109. Ms. Muller testified that Mitchell's tone was serious and that she felt threatened by his actions. After Mitchell took the money, he instructed Ms. Muller to go with him. Ms. Muller complied. As they

walked toward the back door of the bank, Mitchell "yanked" the phone out of the wall. Once outside, Mitchell ordered Ms. Muller to go back into the bank. She again complied. Ms. Muller testified that because she thought Mitchell might come back inside, she locked the back door and left through the front of the bank to call the police. Under these circumstances, there was ample evidence supporting the element of intimidation.

## II. ADMISSIBILITY OF IMPEACHMENT EVIDENCE

Mitchell next contends that the district court erred in refusing to admit extrinsic evidence of a prior inconsistent statement to impeach Ms. Muller's testimony. We review questions concerning the admission of evidence under an abuse of discretion standard. United States v. Bowser, 941 F.2d 1019, 1021 (10th Cir. 1991). "In reviewing a court's determination for abuse of discretion, we will not disturb the determination absent a distinct showing it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error of judgment." Cartier v. Jackson, 59 F.3d 1046, 1048 (10th Cir. 1995).

At trial, the defense sought to impeach Ms. Muller's testimony by introducing a statement contained in a psychological counseling record. The record stated that Ms. Muller "did report that she had some problems with forgetfulness since the above listed event." R. Vol. II, at 120. The defense sought to question Ms. Muller regarding the statement in order to impeach her

testimony that she has no trouble remembering the events that took place during the course of the bank robbery. During cross examination of Ms. Muller, the defense counsel asked the following questions:

> Q: Your memory, however, has not been the best, has it?
>
> A: I think it's been pretty good.
>
> Q: Okay. But isn't it true that you do have trouble sometimes with your memory and suffer from forgetfulness?
>
> A: No.

R. Vol. II, at 52. At this point, the district court refused to allow defense counsel to question Ms. Muller about the statement contained in the psychological record because of the court's concern that the statement might be privileged. R. Vol. II, at 56. After later concluding that the statement was not privileged, the court allowed the defense to recall Ms. Muller to question her regarding whether she had made the statement. R. Vol. II, at 127. The court stated that if Ms. Muller denied making the statement, then the defense could introduce the statement to impeach her testimony.

After the defense recalled Ms. Muller and asked her about the statement, she testified that she could not recall making the statement to her psychologist. Thereafter, the court refused to allow the statement to be put into evidence. The court stated, "She has not denied making this statement. She basically doesn't think she said so but she can't remember. That's not sufficient in the Court's

opinion to have a statement made into the record . . . without the explanation of the person who made the statement." R. Vol. II, at 149-150. The defense objected to the court's ruling.

After reviewing the record, we conclude that the statement is properly characterized as a prior inconsistent statement and should have been admitted under Federal Rule of Evidence 613(b).[1] During cross-examination, Ms. Muller denied having problems with her memory and suffering from forgetfulness. This testimony is directly inconsistent with the statement Ms. Muller allegedly made to her psychologist. Pursuant to Rule 613(b), Ms. Muller was given an opportunity to explain or deny making the prior statement, R. Vol. II, at 146-47, and the prosecution was permitted to interrogate Ms. Muller regarding the statement and her recollection of the events surrounding the bank robbery, R. Vol. II, at 147-48. Ms. Muller testified that she could not remember making the statement, but she confirmed--at the behest of the prosecution--that she clearly remembers the events on the day of the robbery. R. Vol. II, at 146-48. Under Rule 613(b), the defense should have been allowed to introduce extrinsic evidence of the statement to impeach Ms. Muller's testimony. Therefore, the court abused its discretion in

---

[1] Fed. R. Evid. 613(b), in pertinent part, states:
Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon or the interests of justice otherwise require.

excluding extrinsic evidence of the statement.

We conclude, however, that the error was harmless in the context of the entire case against defendant Mitchell. "[E]rror in the admission or exclusion of evidence is harmless if it does not affect the substantial rights of the parties, and the burden of demonstrating that substantial rights were affected rests with the party asserting error." United States v. Arutunoff, 1 F.3d 1112, 1118 (10th Cir. 1993) (quotation omitted). A nonconstitutional error is harmless unless it had a substantial influence on the jury's verdict in the context of the entire case, or leaves one in grave doubt whether it had such an effect. United States v. Walker, 107 F.3d 774, 785 (10th Cir. 1997) (citing Kotteakos v. United States, 328 U.S. 750, 764-65 (1946)).

The overwhelming evidence against Mitchell on the element of intimidation included his own testimony regarding his words and actions after he entered the bank. This testimony alone was sufficient for the jury to find the element of intimidation. Moreover, despite the court's exclusion of the extrinsic evidence regarding Ms. Muller's statement, the defense nevertheless was permitted to ask Ms. Muller in the presence of the jury whether she had told her psychologist that she suffered from forgetfulness. Thus, the jury was aware of this attack on Ms. Muller's credibility but apparently chose to believe Ms. Muller when she testified that she was intimidated. In the context of the entire trial, we cannot say that the

error had a substantial influence in determining the jury's verdict.  Accordingly,

we hold that the error was harmless.

### III. SENTENCING ISSUES

#### A.  Career Offender Enhancement

The district court classified Mitchell as a career offender under U.S.S.G. §

4B1.1.  On appeal, Mitchell challenges that classification, arguing that the district

court  improperly counted his two prior escape convictions in determining that he

was subject to the career offender enhancement.  Whether a defendant was

erroneously classified as a career offender is a question of law subject to de novo

review.  United States v. Bennett, 108 F.3d 1315, 1316 (10th Cir. 1997).

Under section 4B1.1, a defendant is a career offender if:

(1) the defendant was at least eighteen years old at the time of the
instant offense, (2) the instant offense of conviction is a felony that
is either a crime of violence or a controlled substance offense, and
(3) the defendant has at least two prior felony convictions of either a
crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1.  Mitchell does not dispute that he meets the first two

requirements for career offender status, i.e., that he was at least eighteen years old

at the time of his bank robbery and that his conviction for bank robbery by

intimidation is a "crime of violence."  See U.S.S.G. § 4B1.2, comment. (n.2)

(stating that robbery is a "crime of violence").  Mitchell nevertheless argues that

the district court erred in counting his two prior convictions of escape as "crimes

- 8 -

of violence" under the third requirement for career offender status.  Mitchell

contends that his prior escapes were "nonviolent walk-aways" from unsecured

correctional facilities and thus are not "crimes of violence."

Section 4B1.2(1) of the sentencing guidelines defines the term "crime of

violence" as:

> any offense . . . punishable by imprisonment for a term exceeding
> one year that--
> (I) has as an element the use, attempted use, or threatened use of
> physical force against the person of another, or
> (ii) is burglary of a dwelling, arson, or extortion, involves explosives,
> or <u>otherwise involves conduct that presents a serious potential risk of
> physical injury to another</u>.

U.S.S.G. § 4B1.2(1) (emphasis added).  In <u>United States v. Gosling</u>, 39 F.3d

1140, 1142 (10th Cir. 1994), we held that the defendant's escape conviction "by

its nature present[s] a serious potential risk of physical injury to another."  In so

holding, we did not look to the statutory elements of the offense or the underlying

facts of the conviction, <u>id.</u> at 1142 n.3, but rather, we looked to the "expressly

charged conduct," <u>i.e.</u>, willful, unlawful and felonious escape, <u>id.</u> at 1142.  We

concluded that an escape conviction "by its nature . . . is properly characterized as

a crime of violence."  <u>Id.</u>  We reasoned:

> [E]very escape scenario is a powder keg, which may or may not
> explode into violence and result in physical injury to someone at any
> given time, but which always has the serious potential to do so. . . .
> Indeed, even in a case where a defendant escapes from a jail by
> stealth and injures no one in the process, there is still a serious
> potential risk that injury will result when officers find the defendant

and attempt to place him in custody.

Id.

We adhere to this reasoning today and conclude that Mitchell's two prior escape convictions by their nature involved conduct that presented a serious potential risk of physical injury. Thus, they are properly characterized as "crimes of violence" under section 4B1.2(1)(ii).[2] The presentence report indicates that Mitchell had two escapes from correctional facilities in Oklahoma while serving terms of incarceration. One of the escapes was from a community treatment center. The second escape was from a correction center. As a result, we hold that the district court did not err in using Mitchell's two prior escape convictions to classify him as a career offender under section 4B1.1.

## B. Acceptance of Responsibility

---

[2]We reject Mitchell's contention that we must analyze whether his two prior escape convictions are "crimes of violence" under the general framework set forth in United States v. Farnsworth, 92 F.3d 1001, 1008 (10th Cir. 1996). In Farnsworth, we adopted a two-part test for determining whether an offense is a "crime of violence" under section 4B1.2. Under Farnsworth, we first look at the statutory basis of conviction. Id. If the statute is broad enough to encompass both violent and nonviolent crimes, we then look beyond the statutory count of conviction to determine whether the actual offense constitutes a "crime of violence." Id. Mitchell contends that our categorical view of escape convictions set forth in Gosling conflicts with the more recent case-by-case analysis required under Farnsworth. We disagree that Farnsworth altered our holding in Gosling that all escapes are "crimes of violence" under section 4B1.2. Rather, Gosling still stands for the proposition that, regardless of the facts underlying a particular escape, the offense of escape, by its nature, presents a serious potential risk of injury to another and is thus properly characterized as a "crime of violence."

The district court refused to grant a two-level downward adjustment under U.S.S.G. § 3E1.1 for acceptance of responsibility.  Mitchell argues that he is entitled to the adjustment because he confessed to the bank robbery and went to trial only to contest the element of intimidation.

We review the district court's "acceptance of responsibility" determination as a question of fact subject to the clearly erroneous standard.  United States v. Gacnik, 50 F.3d 848, 853 (10th Cir. 1995).  "The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility.  For this reason, the determination of the sentencing judge is entitled to great deference on review."  U.S.S.G. § 3E1.1 , comment. (n.5).

To receive a sentence reduction for acceptance of responsibility, the defendant must show "recognition and affirmative acceptance of personal responsibility for his criminal conduct."  United States v. McAlpine, 32 F.3d 484, 489 (10th Cir.), cert. denied, 513 U.S. 1031 (1994).  The defendant bears the burden of proving acceptance of responsibility by a preponderance of the evidence.  United States v. Wach, 907 F.2d 1038, 1040 (10th Cir. 1990).

In "rare situations" a defendant may deserve a reduction for acceptance of responsibility even though he goes to trial.  U.S.S.G. § 3E1.1, comment. (n.2); United States v. Portillo-Valenzuela, 20 F.3d 393, 394 (10th Cir.), cert. denied, 513 U.S. 886 (1994).  For example, a defendant may admit his factual guilt but go

to trial only to challenge the constitutionality or applicability of a statute.  See U.S.S.G. § 3E1.1, comment. (n.2).  However, when the defendant pleads not guilty and requires the government to prove guilt at trial, the defendant has not demonstrated acceptance of responsibility.  Portillo-Valenzuela, 20 F.3d at 394.

In this case, Mitchell confessed to the police that he had robbed the bank, but he refused to admit that he had intimidated Ms. Muller and thus "put the government to its burden of proof by denying an essential element of the crime." United States v. Nelson, 54 F.3d 1540, 1545 (10th Cir. 1995).  At trial, Mitchell did not assert such nonfactual challenges as the constitutionality or applicability of a statute.  Rather, Mitchell denied his factual guilt for the charged offense of bank robbery by intimidation.  In this situation, the district court did not clearly err in denying a two-level adjustment for acceptance of responsibility.  See id. ("[I]t cannot be said that by conceding some facts, denying others, and denying commission of the crimes charged, [the defendant] accepted responsibility for those crimes.").

## C.  Downward Departure

The district court denied Mitchell's request for a downward departure, holding that, under the circumstances, the court had no authority to depart from the applicable guideline range.  Mitchell argues that the district court erred because it could have exercised its discretion to grant a downward departure

based on two factors. First, Mitchell maintains that given the nonviolent nature of his two prior escape offenses, his career offender status over-represents the seriousness of his criminal history. Second, he argues that his "diminished mental capacity" removes him from the "heartland" of bank robbery cases. We review de novo a district court's conclusion that it is without authority to grant a downward departure. United States v. Sanders, 18 F.3d 1488, 1490-91 (10th Cir. 1994). We review any factual determinations made by the district court for clear error. United States v. Pena, 930 F.2d 1486, 1494 (10th Cir. 1991).

1.      **Over-representation of Criminal History**

We have held that the sentencing guidelines permit the district court to depart downward from career offender status. United States v. Bowser, 941 F.2d 1019, 1023 (10th Cir. 1991). Before granting a downward departure, the district court must find that "there exists . . . [a] mitigating circumstance of a kind . . . not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b); see also U.S.S.G. § 5K2.0; United States v. Ziegler, 39 F.3d 1058, 1060 (10th Cir. 1994). The sentencing guidelines explicitly acknowledge that over-representation of a defendant's criminal history is an appropriate consideration for downward departure. See U.S.S.G. § 4A1.3 (policy statement). Under section 4A1.3, the district court may grant a downward departure if the

court concludes that "a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes." Id.

At the sentencing hearing, the district court rejected Mitchell's request for a downward departure, finding that his career offender status did not over-represent his criminal history. In particular, the court found that Mitchell had engaged in a life of crime, R. Vol. II, at 297, that his incarceration was necessary to protect the public from further crimes, R. Vol. II, at 287-88, and that his two prior escapes justified his enhanced sentence as a career offender, R. Vol. II, at 293. Based on these findings, the court concluded that it was without authority to depart downward under section 4A1.3. Absent clear error, we will not disturb the district court's factual finding that Mitchell's career offender status does not over-represent his criminal history, depriving the district court of discretion to depart downward from the applicable guideline range.

After reviewing the record, and in particular that portion of the pre-sentence report containing Mitchell's criminal history, we conclude that the district court's finding is not clearly erroneous. Mitchell has an extensive criminal history, including a drug possession conviction at age eighteen, two escape convictions, burglary of a dwelling, check fraud, and several other drug-related convictions. Even without application of the career offender

enhancement, Mitchell's criminal history computation under U.S.S.G. § 4A1.1 would have placed him in Criminal History Category VI. Under these circumstances, the court did not clearly err in finding that Mitchell's career offender status does not over-represent the seriousness of his criminal history. As such, the district court properly held that it had no authority to depart downward under section 4A.1.3.

**2.    Diminished Capacity**

The sentencing guidelines also explicitly acknowledge that a defendant's diminished mental capacity is an appropriate consideration for downward departure. See U.S.S.G. § 5K2.13 (policy statement). Section 5K2.13 states, in pertinent part:

> If the defendant committed a non-violent offense while suffering
> from significantly reduced mental capacity . . . , a lower sentence
> may be warranted . . . provided that the defendant's criminal history
> does not indicate a need for incarceration to protect the public.

At the sentencing hearing, the district court accepted Mitchell's contention that he suffers from reduced mental capacity based on the undisputed evidence that he has an I.Q. of 60. R. Vol II, at 287. The district court nevertheless held that it was without authority to grant a downward departure because Mitchell's bank robbery conviction was not a nonviolent offense as required by section 5K2.13. In so holding, the court looked to a separate guideline provision, section 4B1.2, which defines robbery as a "crime of violence." The court concluded that a

"crime of violence" could not be a "nonviolent offense" under section 5K2.13. In addition, the court stated that "even if you can convince the Court of Appeals that this was a non-violent offense, despite the language of [section 4B1.2] . . . you could never satisfy me that your client's criminal history does not indicate a need for incarceration to protect the public." R. Vol. II, at 293. Based on these two conclusions--that Mitchell had not committed a nonviolent offense and that his incarceration was necessary to protect the public--the court held that it could not grant a downward departure for reduced mental capacity.

As a preliminary matter, we note that the circuits are split regarding whether an offense defined as a "crime of violence" under section 4B1.2 can nevertheless qualify as a nonviolent offense under section 5K2.13.[3] We need not address this issue, however, because we conclude that the district court's separate finding that Mitchell's incarceration is necessary to protect the public provides an independent basis precluding the court from granting a downward departure under

---

[3]Six circuits have held that a district court does not have the authority to depart downward under section 5K2.13 if the instant offense is defined as a "crime of violence" under section 4B1.2. See United States v. Mayotte, 76 F.3d 887, 889 (8th Cir. 1996); United States v. Poff, 926 F.2d 588, 591-93 (7th Cir. 1991) (en banc); United States v. Russell, 917 F.2d 512, 517 (11th Cir. 1990); United States v. Rosen, 896 F.2d 789, 791 (3rd Cir. 1990); United States v. Borrayo, 898 F.2d 91, 94 (9th Cir. 1989); United States v. Maddalena, 893 F.2d 815, 819 (6th Cir. 1989). Two circuits have concluded that the "non-violent offense" requirement of section 5K2.13 is not governed by the "crime of violence" definition contained in section 4B1.2. See United States v. Weddle, 30 F.3d 532, 540 (4th Cir. 1994); United States v. Chatman, 986 F.2d 1446, 1450 (D.C. Cir. 1993).

section 5K2.13.  Downward departures for diminished capacity under section 5K2.13 are warranted only if the defendant's "criminal history does not indicate a need for incarceration to protect the public."  Here, the district court found that Mitchell had not satisfied that requirement.  Because we conclude that the court's finding is not clearly erroneous given Mitchell's extensive criminal history, the district court did not err in refusing to depart downward under section 5K2.13.

AFFIRMED.