**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 28 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

AHMED SABRY ABDUL AZIZ
FARAG, aka Luciano Gilbert
Cisneros,

Defendant - Appellant.

No. 01-1559
(D.C. No. 01-CR-247-D)
(D. Colorado)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Judge, **EBEL** and **LUCERO**, Circuit Judges.[**]

On August 24, 2001, a federal jury convicted Defendant-Appellant Ahmed

Sabry Abdul Aziz Farag of one count of making a false statement in an

application for a passport, in violation of 18 U.S.C. § 1542, and the United States

District Court for the District of Colorado subsequently sentenced Mr. Farag to

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.

time served and three years of supervised release. On direct appeal, Mr. Farag argues that his conviction should be reversed because (1) the government did not present sufficient evidence to support his conviction and (2) the district court erroneously excluded extrinsic evidence of a prior inconsistent statement made by an important government witness. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we find both claims unavailing and affirm Mr. Farag's conviction.

I.

In 1997, Mr. Farag, a native of Egypt, illegally entered the United States. Two years later, he moved to Colorado; shortly thereafter, he began working as a cook at a restaurant, where he worked with Angela Kraydie, the former wife of the restaurant's co-owner, Sami Kraydie. In September 2000, Mr. Farag and Ms. Kraydie went to a Denver, Colorado, post office and submitted a passport application in the name of Luciano Gilbert Cisneros, Ms. Kraydie's late brother. According to trial testimony, Ms. Kraydie prepared the application, R.O.A. Vol. 3 at 60-63, Mr. Farag signed the name Luciano Gilbert Cisneros on the document, R.O.A. Vol. 4 at 349, and Luciano Gilbert Cisneros's birth certificate was submitted with the application as proof of identity and citizenship. R.O.A. Vol. 2 at 30, 36, 49-50.

Approximately one month before submitting the passport application, Mr. Farag, with the assistance of Ms. Kraydie, unsuccessfully applied for a social

security card and a Colorado state identification card using the name Luciano Gilbert Cisneros. R.O.A. Vol. 3 at 114-15, 296. After these efforts proved unfruitful, Mr. Farag, again with the help of Ms. Kraydie, obtained an unofficial identification card from a Denver business using the name Luciano Gilbert Cisneros. R.O.A. Vol. 2 at 54; Vol. 4 at 297-99.

On June 20, 2001, a federal grand jury indicted Mr. Farag for making a false statement on a passport application, in violation of 18 U.S.C. § 1542, and for fraudulently using a social security number, in violation of 42 U.S.C. § 408(a)(7)(B). R.O.A. Vol. 1, Doc. 12. A jury subsequently convicted Mr. Farag of making a false statement on a passport application, but acquitted him of the charge concerning the social security number. Id., Doc. 65. This appeal followed.

II.

On appeal, Mr. Farag first argues that the government failed to present sufficient evidence demonstrating that he "willfully and knowingly made a false statement on a passport application." Aplt. Br. at 10. In making this argument, Mr. Farag raises many of the claims he asserted previously at trial, including that he knows and speaks very little English, that Ms. Kraydie prepared the passport application, and that Ms. Kraydie told him that the passport application was, in fact, an application to change his name. Id.

The core of Mr. Farag's argument, however, is that the government's case depended upon contradictory and inconsistent evidence. He points out, for example, that a report prepared by one State Department agent indicated that he spoke poor English, while another State Department agent testified that Mr. Farag "was able to speak and understand English," R.O.A. Vol. 240-41, 243, and he notes that several defense witnesses testified as to his poor proficiency in English. Aplt. Br. at 11-12. Mr. Farag attacks particularly Ms. Kraydie's trial testimony. In his view, Ms. Kraydie, who admitted that she filled out the false passport application, assisted Mr. Farag in his unsuccessful efforts to obtain a social security card and a state identification card in the name of Luciano Gilbert Cisneros, and was convicted of a felony in 1964, lacked credbility. See ,e.g., Aplt. Br. at 13 (arguing that "the evidence to prove [Mr. Farag's] guilt was insufficient to prove his guilt beyond a reasonable doubt" because Ms. Kraydie was not credible). In light of Ms. Kraydie's diminished credibility and the conflicting evidence in the record, Mr. Farag seems to suggest, Ms. Kraydie's testimony that he spoke English well and that he wanted a passport so that he could travel to Egypt and reenter the United States, R.O.A. Vol. 3 at 96, 107-08, should be discounted. As he succinctly explains in his reply brief, "Mr. Farag does not dispute that Ms. Kraydie's testimony supported the government's theory of the case and conflicted with his; however, he contends that no reasonable jury

could have found her testimony credible enough to find guilt beyond a reasonable doubt." Reply Br. at 2.

As a general rule, we treat sufficiency of the evidence claims as legal questions that are reviewed de novo. United States v. McKissick, 204 F.3d 1282, 1289 (10th Cir. 2000). In conducting this de novo review, "we 'ask only whether taking the evidence–both direct and circumstantial, together with the reasonable inferences to be drawn therefrom–in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt.'"[1] Id.

---

[1]In this case, the government points out that Mr. Farag moved for an acquittal under Rule 29 of the Federal Rules of Criminal Procedures after the prosecution rested its case, R.O.A. Vol. 3 at 255-56, a motion the district court denied, id. at 265, but then failed to renew his motion at the close of all the evidence. R.O.A. Vol. 4 at 261; see also Fed. R. Crim. P. 29(a) (providing, in relevant part, that a defendant may move "for a judgement of acquittal" after the government closes its case "if the evidence is insufficient to sustain a conviction"). Because Mr. Farag did not renew his Rule 29(a) motion, the government argues, Mr. Farag waived his sufficiency of the evidence claim, thereby limiting our standard of review to one for plain error. Aple. Br. at 16.

The government is technically correct that the Tenth Circuit follows "the waiver rule," treating a defendant's failure to renew a Rule 29(a) motion at the close of all the evidence as a waiver of a sufficiency of the evidence claim. United States v. Bowie, 892 F.2d 1494, 1496 (10th Cir. 1990). Where waiver occurs, the government rightly notes, we will generally limit our "review [of the claim] for plain error under Fed.R.Crim.P. 52(b)." Id.; see also United States v. Cox, 929 F.2d 1511, 1513 (10th Cir. 1991) (same) (citing United States v. Parrott, 434 F.2d 294, 295 (10th Cir. 1970)). In the sufficiency of the evidence context, however, we have explained that a defendant's waiver "is of little moment," Bowie, 892 F.2d at 1496, because, although "plain error language is sometimes used, . . . the standard actually applied is 'essentially the same as if there had been a timely motion for acquittal.'" Cox, 929 F.3d at 1514 (quoting Bowie, 892

(continued...)

(quoting United States v. Hanzlicek, 187 F.3d 1228, 1239 (10th Cir. 1997) (quotation marks and citation omitted)). During our review, we will not revisit questions of witness credibility or re-weigh the evidence before the jury. See McKissick, 204 F.3d at 1289-90 ("It is for the jury, as the fact finder, to resolve conflicting testimony, weigh the evidence, and draw inferences from the facts presented."); United States v. Beers, 189 F.3d 1297, 1301 (10th Cir. 1999) (explaining that appellate courts evaluating the sufficiency of the evidence will not "'second guess'" jury determinations as to the credibility of witnesses or the weight of the evidence) (quoting United States v. Yoakam, 116 F.3d 1346, 1349 (10th Cir. 1997)).

Turning to the facts of this case, we find Mr. Farag's sufficiency of the evidence argument unpersuasive. First, to the extent Mr. Farag's challenge depends upon Ms. Kraydie's lack of credibility, see Reply Br. at 2 (acknowledging that Ms. Kraydie's testimony supported the government's case, but contending that Ms. Kraydie lacked credibility), his argument fails, for this

---

[1](...continued)
F.2d at 1497) (further citations omitted). Consequently, even when we apply the plain error standard of review to a sufficiency of the evidence claim, we still ask "whether, taking the evidence–both direct and circumstantial, together with the reasonable inferences to be drawn therefrom–in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." United States v. Beers, 189 F.3d 1297, 1301 (10th Cir. 1999) (quotation marks omitted); see also Cox, 929 F.2d at 1514 (identifying standard applied in the plain error context); Bowie, 892 F.2d at 1497 (same).

court will not evaluate witness credibility when considering a sufficiency of the evidence appeal. McKissick, 204 F.3d at 1289; Beers, 189 F.3d at 1301; United States v. Pappert, 112 F.3d 1073, 1077 (10th Cir. 1997). Second, after reviewing the record, we believe that the government presented sufficient evidence to sustain Mr. Farag's conviction for knowingly and willfully making a false statement in a passport application. Ms. Kraydie, for example, testified that Mr. Farag directly spoke in English with officials at the Social Security Administration office and at the Colorado Department of Motor Vehicles, R.O.A. Vol. 3 129-31, 134, and that a private tutor taught Mr. Farag English twice a week while he was working Ms. Kraydie's restaurant. Id. at 114. In addition, a State Department agent testified that Mr. Farag spoke English during his interview, appeared to understand what was said to him in English, and handed over his Egyptian passport when an agent asked him, in English, to do so. R.O.A. Vol. 3 at 238-39. Other witnesses similarly described Mr. Farag as possessing enough English proficiency to negotiate simple transactions, such as renting an apartment. R.O.A. Vol. 3 at 223-24.

Additional circumstantial evidence adduced at trial, contrary to Mr. Farag's claims, reinforces the government's case. For instance, Mr. Farag admitted that he studied English for six years while in school in Egypt, focusing on "the basics and grammar of the English language." R.O.A. Vol. 4 at 312. Furthermore, Mr.

Farag admitted that he studied French for three years during his schooling in Egypt, id. at 311-12, and conceded that his Egyptian passport, contained the French term for passport, "passeport."[2] Id. at 352-53.

A reasonable jury could also have inferred from other circumstantial evidence produced at trial that Mr. Farag submitted the false passport application as part of larger, unlawful attempt to gain legitimate immigration status in the United States. Besides Mr. Farag's unsuccessful efforts to obtain a social security card and a state identification card, the government revealed that Mr. Farag briefly was married to an English speaking US citizen, whom he did not love and whom he knew for only three days prior to the marriage. R.O.A. Vol. 4 at 316.

In light of all this evidence, as well as other evidence in the record, we conclude that a reasonable jury could have found Mr. Farag guilty of knowingly and willfully submitting a false passport application. Beers, 189 F.3d 1301-02. Accordingly, we reject his insufficiency of the evidence argument.

_____

[2]Mr. Farag contends that his schooling in French and English is insufficient to support the jury's verdict because the government produced "no evidence . . . [showing] the number of hours of study, how well Mr. Farag performed, or the nature of the curriculum." Reply Br. at 3-4. We find this argument unconvincing. Looking at the evidence in the light most favorable to the government, we believe a reasonable jury could infer from Mr. Farag's years of study that he gained a sufficient proficiency to understand that he was signing and submitting a passport application.

III.

Mr. Farag's other claim on appeal is that the district court erred in preventing him from introducing extrinsic evidence of a prior out-of-court statement by Ms. Kraydie that was allegedly inconsistent with her trial testimony. During the trial, Mr. Farag's attorney attempted to question a defense witness, Mouhaddin Al Dabbas, about a prior out-of-court statement he overheard Ms. Kraydie make, in which she allegedly told Mr. Farag that the passport application was, in fact, an application to change his name. R.O.A. Vol. 4 at 267. During the trial, according to Mr. Farag, Ms. Kraydie testified that she did not make this statement.[3] The Assistant United States Attorney prosecuting the case promptly

---

[3]Mr. Farag does not directly quote the portion of Ms. Kraydie's testimony that he believes contradicts the prior out-of-court statement that Mr. Al Dabbas would have described. It appears, however, that he thinks the contradiction occurred during the following exchange on cross-examination:

> Q [by defense counsel Warren Williamson]. Now, you told Ahmed Farag when you were going through this process of getting documents and filling out this application . . . that you were doing that to help him change his name to a more American-sounding name, didn't you?
>
> A [by Ms. Kraydie]. The purpose was not just to get him an Americanized sounding name. The purpose was so that he would obtain status so he could visit his family and return back.
>
> . . . .
>
> Q. If you told us the truth today about what you said to Ahmed, that
>
> (continued...)

objected, arguing that Mr. Al Dabbas's testimony was inadmissible hearsay, and the district court immediately sustained the objection. Id. Mr. Farag's attorney then explained that he thought that the statement could be admitted as "[i]mpeachment of what Miss Fradyia [sic] said," an argument that the district court rejected on the grounds that the evidence was "still an out-of-court statement offered for the truth of the matter asserted therein." Id. Mr. Farag's attorney again attempted to clarify the purpose for which he was offering the out-of-court statement, explaining that "an out-of-court statement made in

---

³(...continued)
this form was to be used to change his name to a more American-sounding name, there would be no one to prosecute in this case but you; isn't that true?

A. He was aware of what we were doing.

R.O.A. Vol. 4 at 161-62; see Aplt. Br. at 19 (citing pages 161-62 of volume four of the record on appeal). Although Ms. Kraydie never directly denies telling Mr. Farag that the application was to change his name, the government apparently concedes that Ms. Kraydie's testimony would have been inconsistent with the prior out-of-court statement heard by Mr. Al Dabbas. See Aple. Br. at 31-32. Cf. United States v. Rogers, 549 F.2d 490, 496 (8th Cir. 1976) ("A statement's inconsistency may be determined from the circumstances and is not limited to cases in which diametrically oppose assertions have been made. Thus, inconsistencies may be found in changes in position; they may be implied through silence; and they may be found in denial of recollection."); Dennis v. United States, 346 F.2d 10, 17-18 (10th Cir. 1965) ("In determining variances or inconsistencies we should remember that flat contradictions are not the only test for inconsistency. Omissions of fact or even contrast in emphasis or different order of treatment may be relevant to the process of testing credibility of a witness' trial testimony."), rev'd on other grounds by 384 U.S. 855 (1966).

contradiction to what the witness said under oath comes in" and that the extrinsic evidence was being offered as "[i]mpeachment by prior inconsistent statement." Id. When the district court pressed Mr. Farag's attorney as to what specific provision of the Federal Rules of Evidence he was invoking, however, the attorney cited Rule 801(d)(1), which provides, in relevant part, that prior statements "given under oath subject to the penalty of perjury at a trial, hearing or other proceeding, or in a deposition" by a witness testifying at the current proceeding, and who is "subject to cross-examination concerning the statement," are not considered hearsay and may be admitted for the truth of the matter asserted in the statement. Fed. R .Evid. 801(d)(1)(A). The district court rejected the invocation of Rule 801(d)(1), apparently on the grounds that Ms. Kraydie, the witness Mr. Farag was attempting to impeach, was not then testifying. R.O.A. Vol. 4 at 268.

On appeal, Mr. Farag concedes that his attorney erred by invoking Rule 801(d)(1) when arguing for the admission of the testimony, Aplt. Br. at 16; Reply Br. at 7, but, citing to Rule 613(b), he nonetheless contends that the district court committed reversible error in not admitting the inconsistent statement for impeachment purposes.[4] Aplt. Br. at 16. Sometime later, after a different witness

---

[4]Rule 613(b) states: "Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to

(continued...)

- 11 -

had taken the stand and Mr. Al Dabbas had been excused, R.O.A. Vol. 4 at 279, Mr. Farag's attorney made an offer of proof that Mr. Al Dabbas would have testified that he heard Ms. Kraydie state that the passport application was a document "to change Mr. Farag's name to an American name." R.O.A. Vol. 4 at 305.

Normally, "[w]e review questions concerning the admission of evidence under an abuse of discretion standard. 'In reviewing a court's determination for abuse of discretion, we will not disturb the determination absent a distinct showing that it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error in judgment.'" United States v. Mitchell, 113 F.3d 1528, 1531 (10th Cir. 1997) (quoting Cartier v. Jackson, 59 F.3d 1046, 1048 (10th Cir. 1995)). Even if we conclude that a district court erroneously excluded certain evidence, that error will only result in reversal if we conclude that the error was not harmless and "had a substantial influence on the jury's verdict in the context of the entire case, or leaves one in grave doubt whether it had such an effect." Id. at 1532. Where, however, a party inadequately objects to the exclusion of testimony or makes an insufficient offer

---

[4](...continued)
explain or deny the same and the opposite party is afforded the opportunity to interrogate the witness thereon, or the interests of justice otherwise require." Fed. R. Evid. 613(b).

- 12 -

of proof, we review the district court's exclusion of the evidence under the more deferential plain error standard.[5] United States v. Norman T., 129 F.3d 1099, 1106 (10th Cir. 1997).

In this case, we doubt Mr. Farag properly preserved his claim for appellate review. Although his attorney initially suggested that the prior inconsistent testimony would be used to impeach Ms. Kraydie's prior testimony, his attorney, when pressed by the district court, directed the court to an evidentiary rule that would have admitted the evidence for grounds other than impeachment, an error he now acknowledges.[6] See United States v. Pino-Noriega, 189 F.3d 1089, 1097

_____

[5]Under the plain error standard, "before an appellate court can correct an error not raised at trial, there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.'" United States v. Johnson, 520 U.S. 461, 466-67 (1997) (quoting United States v. Olano, 507 U.S. 725, 732 (1993)). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness integrity, or public reputation of judicial proceedings." Id. at 466-67 (internal quotation marks and citation omitted).

[6]Mr. Farag argues that notwithstanding his invocation of Rule 801(d)(1), he adequately preserved his Rule 613(b) argument on appeal. As Mr. Farag points out, his attorney did suggest during his colloquy with the district court that the evidence was being offered for impeachment purposes. R.O.A. Vol. 4 at 267. To buttress his preservation argument, Mr. Farag invokes our decision in United States v. Tisdale, 248 F.3d 964 (10th Cir. 2001), in which we concluded that an attorney adequately raised an objection to a district court's sentencing decision, even though the attorney's objection was "not a model of specificity" and failed to cite the specific United States Sentencing Guideline provision at issue. Id. at 976. The argument by Mr. Farag's trial counsel, however, went beyond the lack of specificity described in Tisdale, and it may have reinforced the district court's belief that the out-of-court statement was being offered to prove the truth of the

(continued...)

- 13 -

(9th Cir. 1999) (noting that a party fails to preserve an objection on appeal when he makes the wrong specific objection below); United States v. Mendoza-Salgado, 964 F.2d 993, 1008 (10th Cir. 1992) (explaining that a party's objection to the admission of evidence must identify the specific ground for the objection, if the ground was not clear from the context in which the objection was made); Fed. R. Evid. 103(a) (same). Similarly, we have serious reservations about the timeliness of Mr. Farag's offer of proof, given that he did not make the offer until the district court had already excused the witness who would have relayed the out-of-court statement. See Polys v. Trans Colo. Airlines, Inc., 941 F.2d 1404, 1407 1409 (10th Cir. 1991) (noting that an offer of proof should "either precede[] or immediately follow[] the ruling so that the trial judge can reconsider" and explaining that the offer of proof requirement "contemplates some contemporaneity between the trial judge's knowledge about the proposed evidence

---

[6](...continued)
matter asserted, R.O.A. Vol. 4 at 267, i.e., that Ms. Kraydie told Mr. Farag that the passport application was a name change document. For example, when asked by the court to clarify his argument, Mr. Farag's counsel again stated that the evidence could be admitted for impeachment purposes, but he failed to explain that, because it was not being offered for the truth of the matter asserted, the prior inconsistent statement was not hearsay evidence. Mr. Farag's attorney then muddled the issue further by referencing an inapplicable evidentiary rule that removes certain out-of-court statements from the hearsay rule and allows them to be introduced for the truth of the matter asserted. Id. at 267-68; Fed. R. Evid. 801(d)(1)(A). Consequently, we disagree with Mr. Farag's claim that the "substance of [his] objection could not be any clearer." Reply Br. at 7.

and the evidentiary ruling to allow a proper decision <u>at the time</u> the evidence is offered") (emphasis in original); <u>United States v. Russo</u>, 527 F.2d 1051, 1058 (10th Cir. 1976) (concluding that offer of proof made "a day or two" after trial court denied motion to admit polygraph test was untimely); Wright & Graham <u>Federal Prac. & Proc.</u> § 5040 at 212 (West 1997) ("[T]he appropriate time for making the offer of proof is at the time of the objection.").  <u>But see</u> <u>Murphy v. City of Flager Beach</u>, 761 F.2d 622, 626 (11th Cir. 1985) (upholding offer of proof made at evidentiary hearing after trial court had already excluded the evidence); 12 Fed. Proc. L. Ed. § 33:27 (1988) ("It appears that, although an offer of proof under FRE 103(a)(2) need not be made at the precise time the evidence is excluded, it must be made in a reasonably timely manner.").

Even if Mr. Farag properly preserved his argument for appeal and made an adequate offer of proof (thereby removing his argument from the highly demanding plain error standard of review), he is not entitled to relief, for the exclusion of the extrinsic evidence was harmless.  Under Rule 613(b), extrinsic evidence of a prior inconsistent statement may be introduced only to impeach a prior witness's testimony, but may not be used as substantive evidence.  <u>Mitchell</u>, 113 F.3d at 1532; <u>Owen v. Patton</u>, 925 F.3d 1111, 1113 n.1 (8th Cir. 1991).  In particular, prior inconsistent statements may be used to raise doubts about the accuracy of any testimony or statements at trial with which they conflict, as well

as the witness's general credibility.  See United States v. Strother, 49 F.3d 869, 875 (2d Cir. 1995); Firemen's Fund Ins. Co. v. Thien, 8 F.3d 1307, 1311-12 (8th Cir. 1993).

In this case, substantial evidence was introduced at trial undercutting Ms. Kraydie's credibility, including admissions from Ms. Kraydie that she had been previously convicted of a felony, Vol. 3 at 108, 158, had falsified Mr. Farag's passport application, id. at 156-57, and had helped Mr. Farag in his unlawful, failed attempts to obtain documents in the name of Luciano Cisneros from the Social Security Administration office and the Colorado Department of Motor Vehicles.  Id. at 159-60.  Furthermore, during his cross-examination of Ms. Kraydie, Mr. Farag's attorney explicitly suggested that Ms. Kraydie told Mr. Farag that the passport application was really a "document to change his name to a more American-sounding name," id. at 161, and implied that any denial of this fact by Ms. Kraydie would be a lie designed by Ms. Kraydie to protect herself from prosecution.  Id. at 162.  Ms. Kraydie responded somewhat equivocally, explaining, "The purpose was not just to get him an Americanized sounding name.  The purpose was so that he would obtain status so he could visit his family and return back," id. at 161, and that Mr. Farag "was aware of what we were doing."  Id. at 162.  Noticeably, she never expressly denied telling Mr. Farag that the application would be used to change his name.  Therefore, even without the

excluded testimony, Ms. Kraydie's general credibility had been impeached, and evidence in the record allowed Mr. Farag to argue that, in fact, Ms. Kraydie had told Mr. Farag that the application he signed was to change his name, not to obtain a passport. See Mitchell, 113 F.3d at 1532 (holding that exclusion of inconsistent prior statements was harmless error, because, in part, the defendant had been able to challenge the witness's credibility in the presence of the jury).

When this evidence is combined with testimony suggesting that Mr. Farag understood basic English, we remain unconvinced that the exclusion of Ms. Kraydie's allegedly inconsistent statement, even if erroneous, "had a substantial influence on the jury's verdict." See Hanzlicek, 187 F.3d at 1238.

IV.

For the foregoing reasons, we **AFFIRM** Mr. Farag's conviction.


ENTERED FOR THE COURT


David M. Ebel
Circuit Judge