**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 27, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DEREK REDSTAR PAPPAN, also
known as Redstar Derek Pappan,

    Defendant - Appellant.

No. 07-8020
(D. Wyo.)
(D.Ct. Nos. 06-CR-92-D and
06-CR-140-D)

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN**, **BALDOCK**, and **McCONNELL**, Circuit Judges.

Derek Redstar Pappan, an enrolled member of the Northern Arapaho Tribe
and resident of the Wind River Indian Reservation, was sentenced at the low end
of the guideline range after pleading guilty to one firearm count and two drug
counts. He contends that, in denying his request for a downward variance, the
district court improperly considered his race and national origin and that of the
presumed victims of his crimes. He also contends the court erred in sentencing

---

    [*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

him as a career offender under USSG §4B1.1(a) because his prior escape conviction was not a crime of violence within the meaning of the guideline. After Pappan was sentenced, *Chambers v. United States*, – U.S. – , 129 S.Ct. 687 (2009), changed the law of this Circuit with respect to "failure to return" escapes. Accordingly, we must vacate the sentence imposed and remand for re-sentencing.

## I. BACKGROUND

Pappan was a drug addict. He supported his addiction by becoming a small player in a large drug conspiracy. On March 22, 2006, he was indicted on two counts: being a felon in possession of a firearm (Count 1), and being an unlawful user of a controlled substance in possession of a firearm (Count 2). Two months later, he was charged with four counts of a sixty-five count, twenty-eight defendant indictment: conspiracy to possess with intent to distribute and to distribute methamphetamine (Count 1), use of a communication facility to facilitate a felony drug offense (Count 29), and possession with intent to distribute methamphetamine (Counts 30 and 42).

Pappan pled guilty to Count 1 of the first indictment ("the firearm count"), Count 1 of the second indictment ("the conspiracy count"), and Count 29 of the second indictment ("the communications count"). As to the factual basis for these counts, he testified one of his friends had stolen a gun from the friend's father and Pappan "took [the] gun and traded it for some drugs." (R. Vol. VII at 9.) Pappan said he purchased methamphetamine from co-defendant Jose Duran

-2-

"about 30 times" and "sometimes I'd sell some to support my habit." (R. Vol. VI at 40, 41.) Duran "fronted" him the drugs, expecting payment after he sold the drugs to others. (*Id.* at 40.) Pappan called Duran from a payphone in Riverton, Wyoming, for the purpose of arranging a drug deal. At the change of plea hearing, the court advised Pappan it was unclear whether he would be subject to the career offender enhancement, but he faced as much as "300 plus months" imprisonment. (*Id.* at 33.)

The probation office prepared a presentence report (PSR) which determined the base offense level to be 28 for the three counts to which Pappan pled guilty.[1] He received a two-level enhancement for possession of a firearm, *see* USSG §2D1.1(b)(1), and a three-level downward adjustment for acceptance of responsibility, *see* USSG §3E1.1(a), (b). His total offense level would have been 27 but the PSR determined he met the career offender criteria under USSG §4B1.1(a) because he had prior felony convictions for escape and being an accessory before the fact to an aggravated assault,[2] resulting in an offense level of

---

[1] The PSR determined the conspiracy count and the communications count should be grouped together pursuant to USSG §3D1.2(d) because they represent an aggregate harm. It also determined the firearm count should be grouped with the other offenses pursuant to USSG §3D1.2(c) because the possession of a firearm was a specific offense characteristic of the conspiracy. All references to the guidelines are to the version effective November 1, 2006.

[2] The PSR identified the dates of the two prior state court convictions as well as the docket numbers of the resulting criminal cases. It did not, however, identify the particular statutes under which the convictions were obtained; nor did it state whether the convictions resulted from trial or plea bargain. It described the escape conviction as

34.  It then applied the downward adjustment for acceptance of responsibility, *see* USSG §4B1.1(b), bringing his total offense level to 31.  Pappan would have been in Criminal History Category V but for his status as a career offender, which placed him in Category VI.  Pappan's guideline range was 188 to 235 months imprisonment, though two of the counts had lower statutory maximums (120 months on the firearm count and 48 months on the communications count).  Had he not been classified as a career offender, his guideline range would have been 120 to 150 months based on a total offense level of 27 and a Criminal History Category of V.

Pappan objected to the career offender enhancement on the ground that his escape conviction should not be considered a crime of violence.  The probation officer responded by stating the escape conviction constituted a crime of violence within the meaning of §4B1.1(a), citing *United States v. Mitchell*, 113 F.3d 1528 (10th Cir. 1997).  At sentencing, defense counsel acknowledged the holding in *Mitchell*, but did not withdraw the objection.  The court overruled the objection and adopted the guideline range set forth in the PSR.

Pappan requested a downward variance in order to mitigate the severe consequences of the career offender enhancement.  He argued a variance was warranted because he had been incarcerated in an adult correctional facility at the

resulting from Pappan's failure to return to a halfway house or work-release program.

age of fifteen and had effectively grown up in prison; he was a drug addict who recognized he needed help for his addiction; he had not previously received drug treatment, family services, or other assistance; and he had suffered a lack of guidance as a youth and had been exposed to domestic violence, alcohol use and drug use on the reservation. Consistent with the plea agreement, the government recommended Pappan be sentenced at the low end of the guideline range because he was not a large-scale distributor of methamphetamine.

Just before announcing the sentence, the judge stated:

> One other problem I want to -- I want you to focus on the reality of what you did here, sir. You were involved in a criminal conspiracy . . . that involved other individuals. You're a member of the Northern Arapaho Tribe. Some of these principals -- some of whom are convicted felons now in my court. So I'm not disparaging them. They are felons and some of them are not members of your tribal community, and yet you engaged in acts that put at risk the well-being of your tribal community and others in Fremont County and elsewhere in Wyoming. And because of your involvement in this criminal activity, you made it possible for these non-native Americans to do business in areas perhaps where they might have not had an entry, and you've brought a lot of anguish towards other members. You didn't intend to do that. You probably just wanted to satisfy your own addiction. That's the consequence of it. That's why it's criminal conduct, and so that has to be taken into account, and that's why a sentence within the guideline range is appropriate here.

(R. Vol. V at 18-19). The judge sentenced Pappan to the statutory maximum on the two counts that were capped (120 months on the firearm count and 48 months on the communications count) and at the low end of the guidelines, 188 months, on the conspiracy count. The sentences all run concurrently.

## II. DISCUSSION

A.  Application of Career Offender Enhancement

Pursuant to USSG §4B1.1(a), a defendant is subject to the career offender enhancement if:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

Pappan meets the first two of these requirements.  Focusing on the third requirement, he contends the district court erred in applying the career offender enhancement because his prior felony conviction for escape is not a "crime of violence."[3]  Pappan raised this objection in the district court but the court rejected it, relying on *Mitchell*, 113 F.3d 1528.  We review a defendant's legal challenge to a career offender classification de novo.  *See id.* at 1532.

A crime of violence is defined as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."

---

[3] Pappan also contends the court erred in applying the career offender enhancement because the PSR did not identify the statutes under which the predicate convictions were obtained and did not state whether the convictions resulted from trial or plea bargain.  In light of our conclusion that re-sentencing is necessary, we decline to address this argument.

USSG §4B1.2(a)(2). At the time Pappan was sentenced, the controlling law of this Circuit was that every escape conviction was properly characterized as a crime of violence under the residual clause. *See Mitchell*, 113 F.3d at 1533 (concluding defendant's two prior escape convictions were properly characterized as crimes of violence); *United States v. Gosling*, 39 F.3d 1140, 1142 n.3 (10th Cir. 1994) (holding a conviction for escape "by its nature . . . is properly characterized as a crime of violence"). In the absence of en banc reconsideration or a superceding contrary decision by the Supreme Court, "a three-judge panel cannot disregard or overrule circuit precedent." *United States v. Foster*, 104 F.3d 1228, 1229 (10th Cir. 1997). The Supreme Court's decision in *Chambers* requires us to disregard *Gosling* and its progeny and remand for re-sentencing.

In *Chambers*, the Supreme Court held a failure to report for penal confinement is not a violent felony within the terms of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), because "[i]t does not involve conduct that presents a serious potential risk of physical injury to another." 129 S.Ct. at 691 (quotations omitted). The Court explained: "Conceptually speaking, the crime amounts to a form of inaction, a far cry from the purposeful, violent, and aggressive conduct potentially at issue when an offender uses explosives against property, commits arson, burgles a dwelling or residence, or engages in certain forms of extortion." *Id.* at 692 (quotations omitted). The Court noted a United States Sentencing Commission report provided "a conclusive, negative answer" to

-7-

"[t]he question [of] whether [an offender who fails to report] is significantly more likely than others to attack, or physically to resist, an apprehender, thereby producing a serious potential risk of physical injury." *Id.* (quotations omitted).

Pappan was not sentenced under the ACCA, but we have recognized "the definition of 'crime of violence' contained in USSG §4B1.2(a) is virtually identical to that contained in the ACCA." *United States v. Tiger*, 538 F.3d 1297, 1298 (10th Cir. 2008). The Supreme Court's reasoning in *Chambers* thus applies equally to the sentencing guidelines. *See id.*

Though the PSR does not identify the particular statute under which Pappan was convicted, we presume it was Wyo. Stat. Ann. § 7-18-112,[4] which provides:

(a)     An offender, parolee or an inmate is deemed guilty of escape from official detention . . . if, without proper authorization, he:

(i)     Fails to remain within the extended limits of his confinement or to return within the time prescribed to an adult community correctional facility to which he was

---

[4] We so presume because the PSR described the escape conviction as resulting from Pappan's failure to return to a halfway house or work-release program and neither Pappan nor the government objected to this description. Wyoming has multiple statutes proscribing escape. *See* Wyo. Stat. Ann. § 6-5-206(a) (making it a felony to "escape[ ] from official detention"); Wyo. Stat. Ann. § 6-5-207 (making it a felony to "escape[ ] from official detention by violence or while armed with a deadly weapon or by assault upon a person in charge of the detention"); Wyo. Stat. Ann. § 7-16-309 (defining "escape" as "[t]he intentional act of an inmate absenting himself without permission from either the place of employment or the designated place of confinement within the time prescribed"). A conviction under § 6-5-207 would be a "violent felony" within the meaning of §4B1.2(a). Violations of the other statutes might or might not be, a question we need not address here. If our presumption is incorrect and Pappan's prior conviction was not for violating § 7-18-112, the district court can correct the error on remand.

assigned or transferred; or

(ii)     Being a participant in a program established under the provisions of this act he leaves his place of employment or fails or neglects to return to the adult community correctional facility within the time prescribed or when specifically ordered to do so.

In determining whether a conviction obtained under this statute is a "violent felony" within the meaning of §4B1.2(a), we apply a formal categorical approach looking only to the statutory definitions of the prior offense, and not to the particular facts underlying those convictions. *See United States v. Dennis*, 551 F.3d 986, 989 (10th Cir. 2008).

Applying this approach, it is clear a violation of Wyo. Stat. Ann. § 7-18-112 is not a violent felony within the meaning of the guideline because, like the portion of the Illinois statute at issue in *Chambers*, it is a crime of inaction and does not "involve[ ] conduct that presents a serious potential risk of physical injury to another."[5]  USSG §4B1.2(a)(2).  Under *Chambers*, Pappan does not meet

---

[5]  Pappan cites two cases from the Wyoming Supreme Court to demonstrate that the conduct proscribed by Wyo. Stat. Ann. § 7-8-112 does not present a substantial risk of injury to another.  *See Martin v. Wyo.*, 149 P.3d 707, 709-10 (Wyo. 2007) (affirming defendant's conviction for violating § 7-18-112 where defendant was absent from his work release detention facility and from his place of employment for a period of at least three hours); *Jones v. Wyo.*, 132 P.3d 162, 163-64 (Wyo. 2006) (affirming defendant's conviction for violating § 7-18-112 where defendant signed out of a community corrections facility on four different occasions for the stated purpose of attending work but failed to attend work).  Our research has not disclosed a case from the Wyoming Supreme Court considering a conviction under § 7-18-112 for significantly more dangerous conduct.

the criteria of a career offender and should not have been sentenced as such.

B. Reference to Race and National Origin

Pappan contends this case should be reversed and remanded for re-sentencing before a different judge because the judge improperly considered Pappan's race and national origin and that of his presumed victims as an aggravating factor, in violation of the sentencing guidelines and the Fifth and Eighth Amendments. Though Pappan does not suggest the court possessed any animus toward him, he argues "[t]he district court's comments essentially communicated that the district court viewed [him] as deserving of a harsher sentence than he would have deserved had he *not* been Northern Arapaho but engaged in *precisely the same conduct* -- selling drugs on the Wind River reservation." (Appellant's Reply Br. at 2.) The government argues that the judge's mention of Pappan's tribal membership at sentencing was done "only in the context of explaining to [Pappan] some of the repercussions of his criminal conduct." (Appellee's Br. at 14-15.)

Since re-sentencing is required in any event, we consider whether it must be done by a different judge. There are very limited circumstances in which we remand for re-sentencing before a different judge. The government's breach of a plea agreement is one. *See Santobello v. New York*, 404 U.S. 257 (1971). Pappan has pointed to, and our research has disclosed, no other line of Tenth Circuit cases where, absent consideration of a motion for recusal, we have remanded for

re-sentencing before a different judge.

Pappan's reasons for requesting exceptional relief are not compelling and we will not extend the reach of our cases to require re-sentencing before a different judge on these facts. The trial judge clearly wanted Pappan to appreciate the seriousness of his crimes given the length of the sentence, his prior record, problems with substance abuse and apparent inability (or unwillingness) to correlate conduct and consequences. Pappan puts a sinister spin on the judge's remarks, a characterization we view as contrived. The judge was focusing Pappan's attention on his conduct, not his heritage.

Throughout the sentencing the judge treated Pappan as an individual, not a stereotype. The judge considered letters written by Pappan, his sister and his aunt. He told Pappan he was "aware of the fact . . . that . . . [he] had very few, if any, advantages in life" but expressed his "great concern" about his "rather lengthy . . . and menacing criminal history." (*Id.* at 16-17.) He noted Pappan had a GED and possessed "the intellectual ability to succeed if [he] can somehow control all the addictions . . . ." (*Id.* at 17.) The judge told Pappan and his family members present at sentencing that he could "reduce this sentence down the road" if Pappan provided substantial assistance to the government. (*Id.*) He stated: "[I]f I'm impressed that you're being honest – regardless of how the case turns out . . . it will go well for you." (*Id.* at 18.) We perceive no error in the judge's fleeting reference to Pappan's ethnic heritage.

We **REMAND** to the district court, require it to vacate Pappan's sentence and re-sentence him giving particular attention to whether or not his prior conviction for escape was a crime of violence.

Entered for the Court

Per Curiam